(No. 25343.—

WILMA E. KINNEY, Appellant, *vs.* PHILIP C. LINDGREN *et al.* Appellees.

*Opinion filed February 21, 1940—Rehearing denied April 3, 1940.*

Warren H. Orr, and William Shapiro, for appellant.

Hershenson & Hershenson, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

We granted her leave and Wilma E. Kinney has appealed from a second judgment of the Appellate Court for the First District which affirmed, in part, a decree against her. On the first appeal that court had reversed a decree in her favor and had remanded the cause generally. The superior court of Cook county, upon remandment, refused to set the cause down for hearing and entered a decree against her. On the second appeal, the Appellate Court considered itself bound by its first opinion and affirmed the decree, except for the item of trustee's fees which were waived.

On January 24, 1935, appellant filed her complaint in chancery charging Philip C. Lindgren and Fred Heitman with a breach of trust. They were named trustees in the trust agreement entered into January 13, 1922, between themselves and appellant's mother, Anna C. Kinney, who died July 2, 1924. By her complaint appellant prayed for an accounting and for the appointment of a successor trustee. As amended, the complaint charged that the trustees had invested the trust funds in securities which they had purchased from the Heitman Trust Company, of which Heitman was president and treasurer, and Lindgren was vice-president and secretary, and that, although the mortgage bonds so purchased were of little value, the trustees charged the trust with their face value plus interest to dates of purchase. The Heitman Trust Company was also made a party defendant. The defendants answered denying liability, and the cause was referred to a master in chancery. After the proofs were closed, Fred Heitman died, and Ella G. Heitman was made a party and filed her answer, as executrix. The chancellor followed the master in chancery's recommendation and entered a decree as prayed in appellant's amended complaint. It was found that appellees owed $12,865.12 after allowing $716.25 to the surviving

trustee for his services. As already stated, this decree was reversed and the cause was remanded generally by the Appellate Court, and the superior court, after refusing to set the case down for hearing, entered a decree in favor of the appellees which embodied findings of fact opposite to those in the original decree. Appellant was ordered to pay $1469 as fees to the surviving trustee, and she was authorized to retain all the securities remaining in the trust estate to secure payment thereof. Wilma E. Kinney, who became twenty-one years of age shortly after she filed her complaint, was required to accept these securities upon payment of this amount. The complaint was dismissed for want of equity as to the Heitman Trust Company and Ella G. Heitman, as executrix of her husband's estate. On a second appeal, this decree was affirmed, except as to the item for trustee's services, which had been waived in open court.

The trust instrument was usual in form. The trustees were authorized to invest in securities generally, and to sell them at their sole discretion and to reinvest the proceeds. The income was payable monthly to the settlor for her life, and then to her daughter, the appellant, until she became twenty-one, when she was to receive the *corpus*. No express authority was conferred on the trustees to buy from themselves, the Heitman Trust Company, or its predecessor, the Heitman Bond and Mortgage Company, of which they had also been the principal officers. When she created the trust Mrs. Kinney gave the trustees $10,500 in mortgage bonds which she had bought from the Heitman Bond and Mortgage Company, and, on June 6, 1923, she bought $3000 more from the same company and placed these bonds in the trust. Until her death on July 2, 1924, in order to obtain the income from the trust, the trustees required her to sign receipts which purported to approve and ratify, "all the acts of the trustees" up to the date of each receipt. Appellant or her guardian was obliged to sign similar receipts.

The bonds which were originally placed in the trust matured and $11,300 of the proceeds were invested in other mortgage bonds which were purchased from the Heitman Trust Company, the house of issue, between April 1, 1928, and February 1, 1932. All the bonds were in default when the complaint was filed. Appellant also had other mortgage bonds which were in her guardianship fund under the jurisdiction of the probate court, and the Appellate Court, in its first opinion, confused these bonds with those held by the trustees, and gave much weight to evidence of the course of conduct with reference to them in reaching the conclusion that the purchase of the bonds by the trustees from their trust company was authorized, or, at least, had been ratified. Lindgren obtained signed agreements from the guardian and appellant in which they agreed to forbear payment of guardianship bonds amounting to $9500 for periods of two to four years. The guardianship was closed on March 25, 1933, and on that day Lindgren induced appellant to execute a general power of attorney to her aunt, Mrs. Kilbert, who had been her guardian. It clearly appears that Lindgren was not acting as trustee of appellant in obtaining the forbearance agreements, but was acting for the trust company as trustee under the various bond issues. It is also plain that appellant gave the power of attorney at the demand of Lindgren so she could obtain money to go away to school. Mrs. Kilbert testified she told Lindgren he was forcing the issue, and if appellant did not need the money to complete her education, she would never consent to her niece signing the agreements. She told him he had all the child's money; that he made her take bonds as guardian she did not want to take; that he had promised to pay them on maturity, or when appellant reached her majority, but that he had not kept his promises; that he was now denying that he had so promised; that he now claimed that Wilma was no better than anyone else, and that when the forbearance agreements were signed

in the guardianship matter, he had said that all the interest would soon be paid and that the accounts would be all right.

The Appellate Court, in its first opinion, held that there was no evidence that the trustees were not authorized to buy from the trust company the bonds in question or that the bonds were worth less than par when they were purchased. Appellees contend that the Appellate Court passed upon the merits of the case in its first opinion, and that its judgment was final and appealable, notwithstanding the general order of reversal and remandment. They say appellant was then bound to seek a review of that judgment in this court, and since no review was sought, the first decision of the Appellate Court became *res judicata.*

When a decree is reversed and the cause is remanded without specific directions, the judgment of the court below is entirely abrogated, and the cause stands there as if no trial had occurred. The trial court then has the same power over the record as it had before its judgment or decree was rendered. It may permit amendments to the pleadings or the introduction of further evidence, so long as such steps are not inconsistent with the principles announced by the court of review, and do not introduce grounds which did not exist at the original hearing. (*Aurora and Geneva Railway Co.* v. *Harvey,* 178 Ill. 477, 483.) When a judgment is reversed and the cause remanded with directions to proceed in conformity to the decision then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by amendment of the pleadings or by the introduction of additional evidence, the trial court is bound to permit the cause to be redocketed and to permit such amendments and the introduction of further evidence on the new hearing. (*Roggenbuck* v. *Breuhaus,* 330 Ill. 294; *Bailey* v. *Robison,* 244 id. 16; *Aurora and Geneva Railway Co.* v. *Harvey, supra.*) The order of the Appellate Court on the first appeal was of that character, and

was not final and appealable. Appellant was entitled to amend her complaint, if she chose to do so, and to introduce additional evidence, and the superior court should have allowed her motion to set the cause down for hearing. There was no abandonment of appellant's allegation that the mortgage bonds were not worth face value when they were purchased. This allegation was placed in issue by the denial in appellees'. answers, and the testimony of Mrs. Kilbert above referred to, and the other facts and circumstances tending to prove that they were not worth face value. Some of them were purchased in 1932 in the depth of the financial depression, of which we take judicial notice, and all of them were purchased three or more years after the real estate market passed its peak in 1925. The trustees, by reason of their fiduciary relation, were bound to show the value of the securities purchased from their own company, if, indeed, the value was at all material. The Appellate Court erred in holding the allegation had been abandoned.

Nor can we agree that the proof showed that the trustees were authorized to purchase bonds from the Heitman Trust Company. The only evidence which tended to support that conclusion was that the settlor placed bonds which she had purchased from the predecessor of the Heitman Trust Company in the trust when it was created, and about eighteen months later bought $3000 more of such bonds and placed them in the trust. The Appellate Court, in its first opinion, considered evidence which had been excluded because it violated the parol evidence rule. Hyman J. Rosenberg, the attorney for the Heitman Bond and Mortgage Company, had testified that the settlor told him before the trust agreement was signed that she wanted the Heitman Bond and Mortgage Company to be the trustee so it could buy bonds for the trust "of the type" dealt in by that company. He said he told her that company was not chartered to act as trustee, but that the same result

could be obtained by making its officers trustees. This all happened before the trust agreement was signed, and was incompetent. It must be remembered that the settlor died July 2, 1924, two and one-half years after the trust was created, and long before the bonds in question were purchased. Appellant did not attain her majority until November 23, 1932, after all the bonds which remained in the trust had been purchased. Evidence tending to show a ratification of the purchase of the guardianship bonds would not tend to show that appellant ratified the purchase of the bonds for the trust. Appellant could make no ratification until she attained her majority, and even then a full and complete disclosure of the facts to her, with knowledge of her rights, would be necessary. (*White* v. *Sherman*, 168 Ill. 589, 605.) The signing of receipts by the appellant and the settlor for income which purported to approve all acts of the trustees would not, alone, be sufficient.

A trustee stands in a fiduciary relation and in the absence of express authority to do so he can neither sell trust property to himself, nor buy property for the trust estate from himself, or from a company in which he has a substantial or controlling interest, or in which he is a principal officer. The consideration he pays for the property and his good faith are immaterial, and the transaction will be set aside, even though it would have been upheld if the dealings had been at arm's length with a third person. (2 Scott, Law of Trusts, sec. 170.12, pp. 875-877; Restatement of Trusts, par. 170, p. 435.) Appellant correctly contends the court erred in dismissing the complaint as to the trust company. That company, through the knowledge of its officers who were trustees, participated in the breach of trust, and is liable to the appellant for the loss caused thereby. 3 Scott, Law of Trusts, pp. 1760-1762; Restatement of Trusts, par. 326, p. 972.

It was also error to dismiss the complaint as to the executrix of the estate of Fred Heitman. She had been

properly substituted upon the death of her husband, who was trustee, (Ill. Rev. Stat. 1939, chap. 110, par. 178,) and appellant's right of action survived Heitman's death. Ill. Rev. Stat. 1939, chap. 3, par. 125.

The trustees, in open court, waived their claim to fees and under the record presented it would seem that they are not entitled to be paid for their services.

The judgment of the Appellate Court for the First District and the decree of the superior court are, accordingly, reversed. The cause is remanded to the latter court for further proceedings consistent with the views herein expressed.

*Reversed and remanded, with directions.*