LILA SCHAEFER *et al.*, Plaintiffs-Appellees, *v.* CHECKER TAXI COMPANY *et al.*, Defendants.—(CHECKER TAXI COMPANY, Appellant.)

First District (4th Division)    No. 61966

Opinion filed July 28, 1976.

Jesmer and Harris, of Chicago, for appellant.

Anthony L. Russo, of Chicago, for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court entered in an action for personal injuries and property damage arising out of a collision between a Checker taxicab and a car occupied by plaintiff Marie Sisson

and driven by plaintiff Lila Schaefer. Following a bench trial a finding was entered in favor of the plaintiffs and against defendant Checker Taxi Company, Inc. (hereinafter called "Checker"), assessing damages of $1,550 for Lila Schaefer and $2,200 for Marie Sisson.

The issue under consideration is whether the judgment on the finding of negligence was contrary to the manifest weight of the evidence.

At the trial in this matter, testimony was taken of six witnesses in regard to the issue raised on appeal. Those testifying were Lila Schaefer, Marie Sisson, defendant-Quentin Wilson, Clare Sloope, Walter Weintz and Bruce Levin.

On March 6, 1970, the plaintiff Lila Schaefer was driving her car southeast on the Kennedy Expressway, in Chicago, Illinois. Seated to her right was the plaintiff Marie Sisson. The Schaefer car exited from the Kennedy Expressway and proceeded in a southerly direction up an exit ramp approaching Washington Boulevard. At the top of the ramp there is a "yield" sign controlling cars entering Washington Boulevard off the ramp.

The defendant's taxicab, driven by Quentin Wilson, was proceeding east on Washington Boulevard. At Halsted Street, one-half block west of where the ramp intersects Washington Boulevard, the taxicab stopped to pick up a passenger. In the vicinity of the ramp and Washington Boulevard the collision occurred.

Both plaintiffs testified when reaching the "T" intersection of Washington Boulevard and the exit ramp, Mrs. Schaefer "stopped," facing south, and looked both ways. She then pulled into the second lane from the north curb and proceeded 30 to 40 feet in an easterly direction before the impact occurred. Neither was sure whether they saw the defendant's taxi immediately before, at the moment of, or immediately after the impact, because the collision occurred so suddenly. Both testified that after impact, plaintiffs' vehicle was still facing eastbound and completely within the white lines for their lane of traffic, and defendant's taxi made a spin and ended up against the north curb with its right front wheel facing in a northwesterly direction. Both testified that at the time of impact, defendant's taxi was partially in their lane of traffic and partially in the lane of traffic to their right.

The plaintiff Marie Sisson testified the automobile in which she was riding exited from the Kennedy Expressway at Washington and drove to the top of the expressway where it stopped. While stopped, the plaintiff looked both ways and could see a distance of about 1 to 1½ blocks west of where the auto was stopped. The plaintiff saw no moving traffic coming from the west but did see stopped cars about 1½ blocks away. She testified at the point where the expressway intersects Washington

Boulevard, Washington has five lanes of traffic and as they pulled into the second lane from the left and proceeded east for a distance of approximately 2 to 2½ car lengths, the impact occurred.

Marie Sisson described the taxicab as a Yellow Cab, stating it was partially in their lane and partially in the lane to their right at the impact, and that the cab was going 35 to 40 miles per hour at the moment of collision. She testified the cab was going east when it pulled in front of them and at the time of collision they were going 15 to 20 miles per hour.

Plaintiff Lila Schaefer testified on the date of the accident she was driving her car on the Kennedy Expressway, and she exited at Washington Boulevard and proceeded up the ramp in a southerly direction. At the top of the ramp where it intersects Washington Boulevard she stopped for approximately 35 seconds, looking both right and left before proceeding east on Washington. She could see a distance of approximately two blocks when she looked towards the west and although she saw traffic stopped on Washington Boulevard facing east two blocks away, she saw no moving traffic on Washington in that two block distance. At the point where the accident occurred, she described Washington as consisting of five lanes of traffic. She began to move and made a left turn so her car was facing east on Washington. After having turned left into the second lane from the north curb, she testified she moved approximately 40 feet when the impact occurred.

Quentin Wilson testified that on March 6, 1970, he was employed by the Checker Taxi Company as a driver, and on that day he was involved in an accident at Washington Boulevard near the Kennedy Expressway. He had entered Washington Boulevard at Ashland Avenue, which is approximately one mile west of where the accident occurred. He proceeded east on Washington, which is a one-way eastbound street, and arrived at the intersection of Washington and Halsted one-half block west of where the accident occurred when he observed a man at the southeast corner waving his hand for the cab to stop. As he pulled to the southeast corner, he was in the extreme southern lane.

He stopped his cab while the passenger entered the rear of the cab through the right rear door, and as he began to move in an easterly direction he immediately changed his lane, moving into the second lane from the south curb. When the cab was even with the ramp leading up from the Kennedy Expressway, he observed the plaintiffs' car at the top of the ramp, facing south, with its front protruding into Washington Boulevard. He did not see that car come to a stop from the moment he first saw it until impact. He stated at the top of the ramp there is a yield sign for cars coming off of the ramp.

When he saw plaintiffs' car he immediately began to apply his brakes. The other vehicle, however, continued moving south crossing the

northern two lanes of Washington Boulevard and struck the cab in the extreme left rear fender and tire. At impact the cab was either even with or half of it was east of the ramp. The cab was moving at about 20 miles per hour, while the other vehicle was going about 10 miles per hour. The impact moved the cab counterclockwise until it came to rest against the north curb facing northwest.

He testified his destination was the Merchandise Mart and he intended to proceed east on Washington to Wacker Drive, which is a distance of more than four blocks. He stated he was in the second lane from the south curb at the moment of impact.

Clare Sloope testified that on March 6, 1970, he was employed as a Checker Taxi driver and he witnessed an accident at Washington Boulevard near the southbound exit ramp leading up from the Kennedy Expressway. He stated he was proceeding with one passenger from O'Hare Airport to the Loop and he observed the plaintiffs' car as he neared the Washington Boulevard exit ramp on the Kennedy Expressway.

When he first saw the other vehicle it was in front of him and it preceded him off the expressway at Washington. As his taxi entered the ramp the other car was approximately halfway up the ramp. At the top of the ramp on the left-hand side is a yield sign, which is directly below a one-way sign pointing toward the east. He observed two female occupants in the vehicle and stated at no time did the other vehicle stop as it reached the top of the ramp. The other vehicle continued into Washington Boulevard, crossed the two most northerly lanes and struck a passing eastbound Checker taxi. At the moment of impact the eastbound cab was in the second lane from the south curb and appeared to be going approximately 30 miles per hour. The other vehicle involved in the accident entered Washington Boulevard going approximately 15 miles per hour.

Sloope testified that at the moment of the collision the eastbound taxi was approximately even with the ramp, while the other car was facing south and straddling the northern two lanes of Washington Boulevard. He stated the front end of the other car was into the third lane from the north curb on Washington and it was in contact with the taxi.

On cross-examination, Sloope testified that following the impact the plaintiffs' auto was facing east and the vehicle was within the white markers which designate the second lane from the north curb.

Walter Weintz testified by evidence deposition that on March 6, 1970, he witnessed an accident in Chicago, Illinois. He stated he was a passenger in a Checker taxi at the time of the occurrence. He described Washington Boulevard as a one-way eastbound street consisting of four lanes at the point where the accident occurred and stated he was seated in the rear of the cab on the left-hand side. He stated he entered the cab one

or two blocks prior to the point where the accident occurred and the cab driver proceeded east in the second lane from the south curb for that one or two block distance. He testified having entered that lane, the cab driver never changed his lane.

He observed the other auto involved in the accident prior to impact as it was emerging off a ramp leading up from the Kennedy Expressway into Washington Boulevard. When he first observed this auto, it was facing south and moving at what he felt was an excessive speed, and at that moment his cab was eastbound just passing the top of the ramp. As the cab passed a few feet east of the ramp the other auto was emerging from the ramp with a portion of it still on the ramp. He continued to observe the other auto, saw it cross two lanes and strike the cab on the left rear side.

He testified the cab was 60 to 75 feet east of the ramp at impact and the taxi was still in its same lane at the moment of impact. The force of the impact spun the cab so it careened across the left-hand lanes of Washington Boulevard, coming to rest at the north curb facing west. Prior to impact he observed the two occupants in the other auto conversing, with the driver's face turned to her right as she emerged from the ramp. He testified that four or five seconds went by from the moment he first saw the auto coming up the ramp until the impact and there was nothing the cab driver could do to avoid the accident.

In Sloope's opinion the other auto was going about 45 miles per hour as it emerged from the ramp, while the taxi was proceeding east at a speed of about 30 miles per hour.

Bruce Levin, an attorney and office associate of plaintiffs' counsel, testified he visited the scene of the accident and at the point where the exit ramp enters Washington Boulevard, Washington is 62 feet wide, has five marked lanes and room for about two more on the south side of the street. Further, he estimated the distance from the ramp west to Halsted Street to be 140 feet.

Both sides having rested the court entered a finding in favor of the plaintiffs. The court indicated part of the evidence which influenced it in reaching its finding was the photograph of the defendant's taxi.

Checker argues in light of the evidence and in light of the presumption that the plaintiff failed to yield the right of way since she was facing a yield sign just before the collision, the judgment in favor of the plaintiffs was contrary to the manifest weight of the evidence.

■■ The evidence establishes the defendant stopped on the southeast corner of Halsted and Washington to pick up Weintz. The trial court could properly find that at the time plaintiffs' car was stopped at the exit ramp, defendant's taxi was also stopped to pick up a passenger. This explains why plaintiff Schaefer saw no moving traffic on Washington

when she entered the intersection and proceeded east. This evidence sufficiently rebuts any presumption that plaintiff Schaefer failed to yield the right of way.

■■ It is the law in Illinois, and undisputed in the case at bar, where the trial court, hearing a negligence case without a jury, heard the evidence and saw the witnesses, its finding in favor of the plaintiff will not be disturbed by a reviewing court unless manifestly against the weight of the evidence. *Reese v. Laymon* (1954), 2 Ill. 2d 614, 119 N.E.2d 271.

Furthermore, it has been held reviewing judges are not free to reweigh the evidence. Only where there is an absence of probative facts to support a conclusion reached, does reversible error appear. See *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288.

In reviewing the entire record of the case at bar, there appear facts which adequately support the trial court's finding of negligence attributed to the defendant.

We hold the judgment for the plaintiffs in the trial court was proper and not contrary to the manifest weight of the evidence.

■■ Plaintiffs-appellees have asked this court to tax costs and attorney's fees to the defendant. This request is denied. Attorney's fees for the instant case should be borne by the respective parties.

For the foregoing reasons, the judgment of the Circuit Court of Cook County in favor of the plaintiffs is hereby affirmed.

Affirmed.

JOHNSON, P. J., and BURMAN, J., concur.