LUCY GLASS, f/k/a Lucy Peitchel, Plaintiff-Appellant, *v.* IRWIN PEITCHEL, Defendant-Appellee.

First District (5th Division)   No. 63131

Opinion filed September 10, 1976.

Greenberger, Krauss & Jacobs, Chartered, of Chicago (Jay S. Berlinsky and James B. Rosenbloom, of counsel), for appellant.

Edward D. Rosenberg and Ellis B. Rosenzweig, both of Chicago, for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by plaintiff wife from two orders in a post-divorce decree proceeding, one abating the father's child support payments and the other modifying his visitation rights. On appeal, it is contended that (1) the court erred in abating child support payments because of unemployment where no finding was made as to his ability to work or whether he was acting in good faith in not seeking other employment; (2) the court's finding that defendant had not wrongfully dissipated certain assets was against the manifest weight of the evidence; (3) plaintiff was not given an adequate opportunity to conduct discovery; and (4) the court abused its discretion in modifying defendant's visitation schedule.

The record reflects that a 1963 divorce decree required defendant to make child support payments aggregating $55 per week for two minor children. In June, 1975, plaintiff—defendant's former wife—petitioned the court for an increase in child support payments, alleging that his gross income had increased from $12,000 in 1963 to $18,000 per year. The petition was granted, and the support payments were increased to a total of $80 per week. A request for attorney's fees was not heard at that time and was still pending when, on September 17, 1975, defendant petitioned to advance the hearing on the fees and to terminate or reduce the child support payments. He alleged that as a result of the prior hearings he had become "sick, ill and depressed, his job was terminated, his sidelines terminated, and his income reduced to nothing." Further, it was alleged that his wife, on whose income he was then living, was moving to California on October 1 and that he would have to move with her to save their marriage.

At the hearing on the petition on September 22, defendant's attorney first filed an answer which generally denied the allegations of the petition and he then informed the court that he had taken the deposition of defendant who, among other things, had testified he had withdrawn money from a joint savings account and had given it to his present wife. Counsel then stated that he had issued a subpoena requiring her appearance to testify at the hearing. It appears that her attorney was also present, and a motion to quash the subpoena because of improper service was granted.

At the hearing, defendant testified that he had been discharged by his employer. He stated that he lost his job when he was unable to perform his duties because he could not "get hold of myself" as a result of the child

support hearings. He was physically fine but had an emotional problem from which he said he could not "get myself in gear." He stated also that in the several months prior to the hearing, he had received no income from a side business and that he was going to California with his wife to save his marriage. The only assets he had were some stock and a 1975 automobile with a $4,000 mortgage and for which he paid $6,000.

He further testified that some money in a joint savings account, amounting to roughly $10,000, belonged to his present wife and that he had transferred it to her at her request because she was moving to California. After his discharge from work, he took trips to California and Canada, and although he sought no medical attention concerning his mental condition, he did talk about his condition to his brother-in-law, who is a psychiatrist in California.

An order was entered abating the child support payments but requiring defendant to report monthly to plaintiff on his employment status and to send her a copy of his income tax returns. His stock, valued at about $800, was ordered to be sold and the proceeds applied to the support of his children. In addition, the court modified the visitation schedule by granting defendant six weeks visitation in California during the summer and two weeks every other year during the Christmas season.

## Opinion

■■ Plaintiff first contends that the court erred in abating the child support payments without determining whether defendant was able to work or whether he was acting in good faith in not seeking other employment.

Section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) provides that a trial court may terminate or alter child support provisions previously ordered; however, only a material change in circumstances will justify any such modification (*Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 214 N.E.2d 139), and the burden of demonstrating circumstances warranting modification is on the person seeking it (*Daum v. Daum* (1973), 11 Ill. App. 3d 245, 296 N.E.2d 614).

In support of her contention that the court erred in abating the payments here, plaintiff refers us to *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161 (abstract opinion); *Graham v. Graham* (1974), 21 Ill. App. 3d 1032, 316 N.E.2d 143; *Kohn v. Kohn* (1974), 21 Ill. App. 3d 117, 315 N.E.2d 52 (abstract opinion); *Commonwealth v. Mazon* (1949), 163 Pa. Super 502, 63 A.2d 112. A reading of those cases discloses that they stand for the general proposition of law that unless good faith is shown, a voluntary change in or termination of employment will not be considered a sufficient material change to warrant abatement or modification of child support payments. In the present case, however, the

record indicates that defendant's termination of employment was involuntary, and the parties have cited no case, nor have we found any, which have applied the good faith rule in cases involving an involuntary termination or change of employment.

We note that the cases requiring a showing of good faith in voluntary situations are concerned with whether the termination or change was "prompted by a desire to evade his responsibility." (*Graham*, at 1036; see also, *Martinec; Kohn*.) In *Mazon*, the court held that a party "may not refuse to occupy his time profitably" to avoid making support payments. (63 A.2d 112, 114.) We subscribe to the reasoning of these cases, and we are of the opinion that it should also be applied where abatement or reduction of payments is requested because of an involuntary loss of employment. It appears to us that in either situation a parent should not be permitted to avoid responsibility for such payments by the bad faith refusal to earn income.

We believe, however, that there should be a different application of the good faith rule where involuntariness is shown. For example, it appears to us that child support payments may properly be abated or reduced where an inability to pay results from involuntary loss of employment, but we think that such relief should be temporary in nature in the sense that the petitioning party should be required within a reasonable time to establish that continued unemployment was in good faith; *i.e.*, was the result of mental or physical disability or unsuccessful attempts to obtain other employment.

Here, it was within the discretion of the trial court to abate the child support payments on the uncontradicted testimony of defendant that he was discharged from his employment and had no other income. We note that the court recognized the continuing responsibility of defendant under the previous court order to make those payments by requiring that his stock be sold and the proceeds used as support payments; that he notify plaintiff monthly concerning his employment status; and that he provide her with a copy of his income tax returns. However, it seems to us that such a solution is inadequate in that it would permit a party to refrain from seeking employment, or to earn income in any manner, in order to avoid making payments. It has the effect of a permanent abatement because, by refusing to occupy his time profitably, the party could avoid ever making payments. This is particularly so in the instant case, where defendant is being supported by his present wife and needs only wait a few years until his children, now ages 16 and 14, become of age.

Although it is the rule that modification of child support provisions generally rests in the sound discretion of the trial court (*Scalfaro v. Scalfaro* (1970), 123 Ill. App. 2d 23, 259 N.E.2d 644), such an order may be reversed when manifest injustice has been done (16A Ill. L. & Pr.

*Divorce* §253 (1971)). Here, at the time the abatement order was entered, defendant had already been unemployed for about five weeks, and it does not appear from the record that defendant established good faith in his inability to provide support. This, of course, placed the burden on his wife, who had not been ordered to do so although she had a "joint and severable" financial responsibility with defendant to support their children. (*Hursh v. Hursh* (1975), 26 Ill. App. 3d 947, 326 N.E.2d 95.) Thus, we are of the opinion that defendant's alleged inability to pay, absent a showing of good faith, has resulted in not only manifest injustice to plaintiff, but perhaps also to the children, in view of the fact that there was no evidence in the record concerning plaintiff's ability to support them. We hasten to add, however, that this conclusion results from our holding that the good faith rule should be applied in cases of involuntary employment termination, and it should not be considered in derogation of the very capable trial judge who obviously recognized the problem involved.

■■ For the reasons stated, we will reverse that portion of the order appealed from which abated the child support payments, and we will remand this matter with directions to conduct a hearing to determine not only defendant's ability to support his children but also whether he has acted in good faith in failing to obtain employment or otherwise earn income.

We find no merit in plaintiff's remaining contentions—(1) that the trial court erred in failing to find that defendant had wilfully dissipated his assets to avoid paying child support; (2) that plaintiff was not given an adequate opportunity to conduct discovery; and (3) that the trial court erred in modifying visitation rights.

■■ As to the first contention, the general rule is that when one depositor places funds in a joint account, a presumption of gift to the other joint tenant arises which can only be overcome by clear and convincing evidence that no gift was intended. (*Bilek v. Ryan* (1974), 19 Ill. App. 3d 1027, 313 N.E.2d 178; *In re Estate of Taggart* (1973), 15 Ill. App. 3d 1079, 305 N.E.2d 301; *Estate of Naumann v. Vanderwerff* (1971), 1 Ill. App. 3d 419, 274 N.E.2d 147.) In this case, defendant testified that his present wife had contributed the entire $10,000 to their joint savings account and that she had demanded the return of these funds because she was moving to California. There being no contrary evidence presented, the question before the court—that is, whether defendant had sufficiently overcome the presumption of donative intent—was dependent on an assessment of the credibility of defendant. This was the function of the trial court in a nonjury trial, and its determination should not be disturbed unless it is against the manifest weight of the evidence (*Johnson v. Fischer*

(1969), 108 Ill. App. 2d 433, 247 N.E.2d 805), which we do not believe to be the fact here.

■■ Neither do we see substantial prejudice to plaintiff because only five days was allowed for discovery in this matter. The record indicates that plaintiff was able to take the discovery deposition of defendant within that time, and it was asserted by defendant in his brief and not denied by plaintiff that the parties had been involved in post-decree litigation a few months prior to the present proceedings, during which plaintiff had obtained full information concerning defendant's income and assets. Plaintiff does not inform us as to what discovery she was prevented from obtaining, other than her inability to depose defendant's present wife. We have not been told what information might be expected from that deposition, and the probability is that it would merely have corroborated the testimony of defendant. Furthermore, although plaintiff verbally objected to defendant's motion to advance the hearing, there is nothing in the record to indicate whether she requested additional time for discovery either by oral or written motion. Not even after the motion to quash the purported service of subpoena upon defendant's present wife was sustained did plaintiff ask for a continuance so that proper service iould be made.

In view of the foregoing and considering the fact that an early resolution of the matter had been requested, we fail to see any merit in the contention of defendant that the court abused its discretion in not giving her adequate time to conduct the discovery.

■■ Finally, the question of visitation rights was also a matter for the sound discretion of the court. (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347.) In her brief, plaintiff asserted that defendant's allegations concerning his emotional state raised some question about the advisability of requiring the children to visit with him in California, and she argues that the trial court abused its discretion "in failing to grant plaintiff the opportunity to make a considered response to defendant's request for visitations under the circumstances here present * * *."

An order of visitation may be modified upon motion as the circumstances require where it appears reasonable and proper to do so. (*Smith v. Smith* (1962), 36 Ill. App. 2d 55, 183 N.E.2d 559.) A trial court has broad discretion in altering visitation privileges, and its determination should not be disturbed on appeal unless a manifest injustice has been done. (*Rodely.*) Here, the record indicates that defendant had been granted visitation rights in the 1963 decree, and it appears that he had visited with the children during the ensuing years. His request for a change of those rights resulted from his intended move to California, and it appears to us that the order of the court represented a fair allocation of

246

the nonschool time of these teenage children. See *Flanagan v. Flanagan* (1970), 123 Ill. App. 2d 17, 259 N.E.2d 610, where this court affirmed visitation for an out-of-State father with his 12- and 13-year-old sons for three weeks during the summer and five days on alternating Christmas and spring vacations. We do not see defendant's statement as to his emotional condition as being sufficient to deprive him of visitation privileges. In any event, if there was any indication that the alleged emotional state of defendant untowardly affected the children, in view of the ongoing nature of this matter, plaintiff could readily have brought it to the attention of the trial court—which she has not done. Considering the totality of the circumstances, we find no manifest injustice resulting from the change in those privileges.

The order of the trial court modifying the visitation rights of defendant is affirmed. The separate order appealed from which abated the child support payments is reversed, and the matter is remanded with directions to conduct a hearing on defendant's petition consistent with the content of this opinion, to determine whether defendant's inability to make child support payments is in good faith.

Affirmed in part. Reversed in part and remanded with directions.

BARRETT and DRUCKER, JJ., concur.