**Edwin M. ELLIS, Appellant,**

v.

**Joene E. ELLIS, Appellee.**

No. 60225.

Supreme Court of Iowa.

Feb. 22, 1978.

Andrew J. Sonderman, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Joseph R. Cahill, of Nelson & Cahill, Nevada, for appellee.

Considered by MOORE, C. J., and LeGRAND, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Neither party is satisfied with a trial court order reducing plaintiff Edwin M. Ellis's alimony obligation to defendant Joene E. Ellis from $400 to $362.50 per month. The order was entered after hearing on application by each of them for modification of the alimony award in their divorce decree. Edwin contends the obligation should have been eliminated entirely, and Joene asserts the award should have been increased. Upon our de novo review of the record we find the original decree should not have been modified. Consequently, we affirm on plaintiff's appeal and modify and affirm on defendant's cross-appeal.

The original decree was entered October 23, 1969. It approved and incorporated a stipulation of the parties providing property division, child support and alimony. The property division was completed and Edwin satisfied the child support obligation. Edwin was to pay Joene $400 per month alimony until she remarried or either party died.

When the decree was entered Edwin was Chief of the Bacteriology Section of the National Disease Center, U.S. Department of Agriculture, in Ames, earning $21,003 annually. He holds four degrees and is a doctor of veterinary medicine. Joene was employed as an alcoholism counselor, earning $4200 annually.

Edwin subsequently married Carmen Ellis. They have a daughter, Carolyn, age four at the time of the modification hearing. Edwin also assumed financial responsibility for Carmen's mother, Linda Ho Fook, who moved to the United States from Jamaica.

Edwin became 62 during 1976 and decided to take voluntary civil service retirement at the end of the year. He held the same position he had when the decree was entered, earning $36,500 a year. Carmen was employed by Iowa State University, earning $8,352 a year. Her mother had sold property in Jamaica and distributed approximately $20,000 to her children, including Carmen. Upon retirement Edwin planned to move to St. Petersburg, Florida, and live on his $750 per month civil service pension. Carmen planned to quit her job and enroll in the University of South Florida in a three-year program, seeking a Ph.D. in virology. In preparation for this move, Edwin and Carmen sold their home in Ames, liquidated other assets, and purchased a home in St. Petersburg for $56,000 which they paid in full. Edwin owned a sailboat and two motor vehicles and estimated he had sufficient funds to finance the move to Florida.

Based on these circumstances, Edwin filed an application for elimination of his alimony obligation to Joene. She counterclaimed for an increase in alimony.

Joene, age 53 at the time of hearing, was still employed in 1976 as an alcoholism counselor, then earning $10,200 annually. She lived in a home valued at $18,000 which was subject to an $8,835.43 mortgage. She had approximately $15,000 in savings and insurance.

Edwin said his decision to retire was precipitated by job pressures and health problems. He testified as follows:

Q. Dr. Ellis, what is your present reason for retirement? A. The reason is that I cannot adequately handle the position I have.

Q. Why is that sir? A. Mainly because of the pressures and because of my health at the present time. I have just recurring streptococcus infections of the throat which keep me pretty much down, and I have arthritic, osteoarthritic changes in my spine which cause constant pain. I take aspirin or indocin four times a day and sometimes at night in the middle of the night.

He also testified as to his reason for moving to Florida:

Q. Is there any particular reason that you and your family are now moving to Florida? A. Well, I am not able to maintain the job. It's too much for me, and I realize it, and I have been advised that the warmer climate would be a lot better for my upper respiratory tract.

The cold seems to have a bad effect on me, the winters.

Even though the back problem had been diagnosed in 1970, Edwin engaged in vigorous exercise until a year or so before the modification hearing. He testified he stopped jogging because of knee problems. He still exercised by swimming.

He offered no medical evidence to support his testimony. He did not claim either to be unemployable in his field or to be disabled from obtaining gainful employment. Despite evidence to the contrary, he simply stated he had no present intention of engaging in any income-producing activity after moving to Florida.

Joene offered expert testimony showing inflation of 55 percent from the date of decree until the hearing date and present depreciation of the dollar of approximately five percent per year. She also offered evidence of her own history of medical problems and of the possibility she might be unable to continue her work much longer because of a "burn-out" phenomenon endemic among counselors.

The trial court found Edwin's retirement was voluntary and not forced by health considerations. The court characterized Edwin's testimony regarding future plans as evasive and found he was not acting in good faith in seeking modification of the decree. Because Joene's income had increased slightly more than the rate of inflation from the date of the decree, the court nevertheless reduced Edwin's alimony obligation from $400 to $362.50 per month. Both parties appealed.

 No disagreement exists regarding the basic principles applicable to our review. They are stated in *Page v. Page*, 219 N.W.2d 556 (Iowa 1974), and *In re Marriage of Glass*, 213 N.W.2d 668 (Iowa 1973). The burden is on the party seeking modification to prove a substantial change in circumstances from the time the decree was entered making it equitable and just that different terms be fixed. A decree is not to be modified unless its enforcement will be attended by positive wrong or injustice as a result of changed conditions.

The specific question raised by Edwin's application is whether his planned voluntary retirement constitutes proof of changed circumstances justifying elimination of his alimony obligation. Although we have previously recognized forced retirement may establish changed circumstances permitting modification, *Toney v. Toney*, 213 Iowa 398, 239 N.W. 21 (1931), we have not confronted the issue of voluntary retirement. Nevertheless, we took a dim view of an application for modification of a father's child support obligation when the father voluntarily terminated employment to return to college in *Reed v. Reed*, 260 Iowa 1166, 1168, 152 N.W.2d 190, 191 (1967). We said:

> Commendable as it may otherwise be, the self-imposed termination of employment by any person in order to obtain more schooling cannot be looked upon with favor when it is detrimental to his child's best interests and at the resultant expense of a former spouse.

We believe the same principle applies by analogy here.

Edwin's application is founded upon a basic misconception. He equates self-interest with good faith. We do not dispute the sincerity of his wish to leave his employment and move to a warmer climate. We do not doubt his desire to see his present wife continue her education. Nor do we question his devotion to their child and his mother-in-law. Although the record indicates his health problems are not as serious as he makes them out to be, we do not think they are imaginary. However, he is not free to plan his future without regard to his obligation to his first wife. He cannot arbitrarily freeze her out of his future. Similar obligations in and apart from family life compel many persons to maintain employment which may be difficult, undesirable and even physically or mentally painful.

 We believe it is significant that he is not disabled from working. This is because his ability to pay alimony is to be determined on the basis of his earning capacity rather than by the amount of his voluntari-

ly reduced income. See *Hutcheson v. Hutcheson*, 197 N.W.2d 594 (Iowa 1972).

Edwin complained of pressures in the position from which he planned to retire and problems with Iowa climate, but he will have neither of these difficulties in Florida. He has four degrees, vast experience, and a highly marketable skill. Even if termination of his government position is justified, he has substantial earning capacity. We believe he is able to meet his alimony obligation.

■ This case is governed by the principle stated in *Commonwealth ex rel. Mazon v. Mazon*, 163 Pa.Super. 502, 505, 63 A.2d 112, 114 (1949), as follows:

> A defendant cannot voluntarily abandon his employment, reduce his wages, or by other conduct bring about a reduced income and thereby avoid, or cause the reduction of, a reasonable support order * * *.

When a person's inability to pay alimony or child support is self-inflicted or voluntary, it will not constitute a ground for reduction of future payments. *Tydings v. Tydings*, 349 A.2d 462 (D.C.App.1975); *Glass v. Peitchel*, 42 Ill.App.3d 240, 355 N.E.2d 750 (1976); *Crosby v. Crosby*, 182 Va. 461, 29 S.E.2d 241 (1944); *Lambert v. Lambert*, 66 Wash.2d 503, 403 P.2d 664 (1965).

■ We hold Edwin's asserted inability to pay alimony was "self-inflicted or voluntary" within the meaning of this rule. Therefore we conclude he did not show his voluntary cessation of work is a change of circumstances making it positively wrong or unjust to enforce his alimony obligation under the original decree.

■ Moreover, we believe the trial court should not have reduced the obligation based on Joene's earnings. Although her income increased slightly more than enough to offset depreciation of the dollar since the decree was entered, any edge this gives her is likely to disappear quickly at the current inflation rate. As to her cross-appeal, we do not believe the present record warrants an increase in alimony beyond the amount ordered in the divorce decree.

We affirm on Edwin's appeal, modify on Joene's appeal by returning the alimony award to $400 per month as provided in the decree, and, except for this modification, affirm on her cross-appeal.

AFFIRMED ON APPEAL; MODIFIED AND AFFIRMED ON CROSS–APPEAL.