LUCY GLASS, Plaintiff-Appellant, *v.* IRWIN PEITCHEL, Defendant-Appellee.

First District (5th Division)   No. 77-1210

Opinion filed August 4, 1978.

58

Greenberger, Krauss & Jacobs, Chartered, of Chicago (James T. Ryan, of counsel), for appellant.

Edward D. Rosenberg and Ellis B. Rosenzweig, both of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

In plaintiff's first appeal (*Glass v. Peitchel* (1976), 42 Ill. App. 3d 240, 355 N.E.2d 750), we reversed a circuit court order which abated child support payments until further order of the court and remanded the cause with directions to conduct a hearing to determine whether defendant's inability to make those payments was in good faith. On remand, following a hearing, the trial court found that defendant had been acting in good faith and accordingly entered a judgment which ordered, *inter alia*, that the previous order abating the child support payments remain in full force and effect. On appeal from this judgment, plaintiff contends that the trial court erred when the evidence it heard prior to the entry of its order was outside the scope of the hearing as ordered on remand. She also contends that the court's finding is unsupported by the evidence.

The following evidence is pertinent to the disposition of this appeal.

A divorce decree was entered on March 4, 1963, dissolving the marriage of the parties to this appeal. It required defendant to pay $55 per week as support for their two children, ages one and three years. Following a hearing on plaintiff's petition for modification, the trial court on June 11, 1975, increased the child support payments to $80 per week. On September 11, 1975, defendant filed his petition to abate or reduce the child support payments, alleging that, as a result of the prior hearings, he had become ill and depressed, his job had been terminated and his income reduced to virtually nothing. He further alleged that he was being supported by his present wife, that she was moving to California on October 1, and that he would have to move with her in order to save their marriage. Following a hearing, the trial court entered an order on September 29, 1975, which, *inter alia,* abated the child support payments.

On plaintiff's appeal from the September 29 order, we reversed and

remanded the case, "with directions to conduct a hearing to determine not only defendant's ability to support his children but also whether he has acted in good faith in failing to obtain employment or otherwise earn income." (42 Ill. App. 3d 240, 244, 355 N.E.2d 750, 755.) At the hearing on remand defendant testified, under section 60 examination, that prior to his involuntary termination on August 14, 1975, he had been employed by Center Video in Chicago, and had earned a gross annual income of approximately $18,000. He also had been able to run his own business which, in the same year, had earned approximately $11,000. In order to assist him in obtaining another job, his employer at Center Video sent him a letter stating that he had been laid off for budgetary reasons. He admitted having made substantial withdrawals from his savings accounts one week before his termination. Following his termination, he and his present wife took an eight-day trip to California and also a three- or four-day visit to her relatives in Canada. He did not look for work during either of these trips. Upon his return to Chicago he talked to some people regarding work, including persons in the same industry and some friends with business interests. He also talked to a druggist who had a number of stores, and to his attorney, his attorney's associate, and his two accountants, who knew some possible employment contacts. He admitted testifying at the September 1975 hearing that he had not been up to looking for work, meaning that he was in a depressed condition due to harassment by plaintiff, and he suffered from emotional problems. He felt that he could not go out and ask people whom he did not know for jobs, and he therefore talked only to people that he knew. He also admitted that during the period preceding September 29, 1977, he did not send out any resumes or answer any classified advertisements. He further admitted that he never established a professional relationship with a psychiatrist or psychologist.

On direct examination on his own behalf, he testified that the discussions he had with people in Chicago were part of a good faith effort by him to find a job. He had to move to California to save his marriage. He received unemployment compensation until August 1976. Since then he has been working as a commissioned salesman for a greeting card company. The unemployment office had a number of jobs listed as available and although he made some calls to investigate them, he was overqualified for most of them, and was unable to get a position. He currently grosses approximately $100 per week in commissions which leaves no profit after taxes and other expenses. His wife pays for the rent, food and support of their son. He has made various attempts to find a job from the time that he moved to California until a week before the May 1977 hearing, but his present position is the only one he has been able to obtain.

Following this hearing the trial court on May 23, 1977, issued an order finding that from August 14, 1975, to September 29, 1975, defendant was not in bad faith in attempting to find a job, and that from October 1, 1975, until the date of the order, he was acting in good faith to improve his financial and job situation. The court therefore ordered that the child support abatement order of September 29, 1975, remain in full force and effect. Plaintiff subsequently filed her notice of appeal.

OPINION

Although plaintiff, in her brief, raises several issues, the allegation common to all but her last argument is that the trial court erred in examining whether defendant was acting in good faith on any date outside what plaintiff terms as the "crucial period" of August 14, 1975, when defendant was involuntarily discharged from his job, to September 29, 1975, when the original order abating child support payments was entered. Plaintiff argues that the trial court's finding that defendant was not in bad faith during the "crucial period" is the equivalent of a finding that, during that time, he did not exhibit the good faith required by this court. Plaintiff further argues that this is the only finding supported by the evidence, that any consideration or judgment of defendant's conduct after the "crucial period" was outside the proper scope of the hearing on remand, and that the order continuing the abatement of child support was therefore erroneous.

■■■ We reject plaintiff's argument. Regarding the fact that the trial court referred in its order to defendant's lack of bad faith as well as his good faith, we note that our previous opinion in this case explained that:

"[A] parent should not be permitted to avoid responsibility for such [child support] payments by the bad faith refusal to earn income.

*  *  *

[T]he petitioning party should be required within a reasonable time to establish that continued unemployment was in good faith; *i.e.*, was the result of mental or physical disability or unsuccessful attempts to obtain other employment." (42 Ill. App. 3d 240, 243, 355 N.E.2d 750, 754.)

Plaintiff has not cited and we have not found any language in that opinion which limited the lower court's inquiry or defined "a reasonable time" to be the period that she suggests. Moreover, it is clear that where, as in this case, cause is remanded for a hearing consistent with the contents of the opinion, the only restriction upon the introduction of new evidence in the trial court is that such evidence should neither be inconsistent with the principles announced in our opinion, nor introduce grounds which did not exist at the original hearing. (*Kinney v. Lindgren* (1940), 373 Ill. 415, 26

N.E.2d 471; see also *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1977), 46 Ill. App. 3d 412, 361 N.E.2d 23.) The record reveals that the trial court indicated at an early stage of the proceedings that it would hear new evidence regarding defendant's continued good faith, and, contrary to plaintiff's implication, did not improperly limit or prevent cross-examination as to any evidence that was adduced. We, therefore, conclude that the trial court properly heard the evidence regarding defendant's employment, attempts to find other jobs, and overall financial situation in order to determine whether his claimed continued inability to make further child support payments was in good faith.

■■ ■ Plaintiff's remaining argument is that the court's finding that defendant's inability to pay child support payments was in good faith is unsupported by the evidence. Reversal of the trial court's holding would be proper only if it were manifestly against the weight of the evidence, since the trial judge, as the trier of fact, is in a superior position to hear and determine the credibility of the witnesses. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.) Reviewing judges are therefore not free to reweigh the evidence, and only where there is an absence of probative facts to support a conclusion reached does reversible error appear. (*Schaefer v. Checker Taxi Co.* (1976), 41 Ill. App. 3d 32, 353 N.E.2d 338.) The trial court, in reaching its decision, heard evidence of defendant's emotional problems after being involuntarily discharged in 1975, his attempts to find work both in Chicago and California, and his current financial and employment situation. A review of the record indicates that the court's conclusion that defendant was acting in good faith is not against the manifest weight of the evidence. The judgment that the 1975 order abating child support payments remain in full force and effect is accordingly affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.