**IN THE COURT OF APPEALS OF IOWA**

No. 22-0240
Filed January 25, 2023

IN RE THE MARRIAGE OF THERESA MARIE FICKEN
AND DAVID WILLIAM FICKEN

Upon the Petition of
**THERESA MARIE FICKEN,**
        Petitioner-Appellee,

**And Concerning
DAVID WILLIAM FICKEN,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Sean McPartland,

Judge.

        A former husband appeals after the district court denied his application for

modification of his spousal support obligation. **AFFIRMED AND REMANDED**

**WITH INSTRUCTIONS.**

        John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for

appellant.

        Mark D. Fisher of Howes Law Firm, PC, Cedar Rapids, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

David Ficken appeals the district court's denial of his petition to modify his spousal support to Theresa Ficken following the dissolution of their marriage in 2017. The district court denied the petition because David failed to show that either his upcoming retirement or Theresa's employment were substantial changes in circumstances justifying a modification of the award. On our de novo review, we also find these were not substantial changes in circumstance and affirm.

**I. Background Facts and Prior Proceedings.**

David and Theresa were married in 1992. Starting in 1983 and through the whole of the marriage, David worked as a delivery driver for United Parcel Service (UPS). For thirteen years of their twenty-four-year marriage, Theresa worked inside the home; but at the time of the dissolution, she was working part time as a paraeducator in a local school district. At the time of the dissolution trial, the district court found that while Theresa was earning less, she had an earning capacity of $25,000 a year as she was capable of performing full-time work. David earned approximately $79,000 per year. On that basis, David was ordered to pay Theresa $1750 each month in spousal support. With an eye on retirement,[1] in 2019, David filed a petition for modification to eliminate the spousal-support obligation based on his imminent retirement and what he deemed as Theresa's continued underemployment. In 2020, David earned more than $92,000 and Theresa reported yearly earnings over $15,000.

---

[1] By the time of the modification hearing in September 2021, David had already applied for retirement. He was fifty-nine years old. Theresa was fifty-eight years old.

By all accounts, David's job as a delivery driver is physically and mentally demanding, which the district court noted he credibly described. In his career, he has suffered injuries to his back, shoulders, and feet. He also reported high blood pressure that, if uncontrolled, could prevent him from receiving medical clearance from the Department of Transportation to continue work. As David testified at the modification hearing, his goal was always to retire and "walk out of [UPS] in one piece. . . . I'm defeating my purpose if I work as long as I have there, and I come out of there because I have a physical disability and I'm unable to go further in my next step of life." He explained he planned to find less demanding part-time work after retiring from UPS. His primary care physician testified that retiring would probably help David's symptoms; David's medical records also reflect the doctor's opinion that retirement "would likely result in improvement in his trouble [and] some physical symptoms." But, at the time of the modification hearing, the doctor had not placed any work restrictions on David, nor had he advised David to quit working. The physician addressed questioning on this issue:

> Q. No work restrictions? A. He had had some restriction because of the blood pressure elevation and his responsibility and palatability to safety, and blood pressure control is important for that. So that did restrict him for a time, but at present time he's been doing his activity without restriction.
> Q. And you're certainly not saying Mr. Ficken has to retire; correct? A. I am not.
> Q. You're simply saying that it may benefit him—benefit decreased symptoms if he no longer had that employment? A. Correct.

As for assets available to him, David also testified about his retirement accounts, pensions, and IRA. And as developed during the modification trial, the district court

also learned about David's equity interest in his wife's home.[2] David told the court he did not plan on applying for his social security retirement benefits or accessing his private IRA until he turned age sixty-two. Likewise, he confirmed he intended to find part-time work that was less physical and less stressful but would not seek a full-time position. David wanted to "explore his own personal hobbies with retirement."

For her part, Theresa began working full time during the school year, which qualified her for health insurance partially subsidized by her employer. She has eight weeks off during the summer but did not have secondary employment during that time. Since her divorce from David, Theresa experienced a number of health issues, and her employer has accommodated these physical limitations. Her actual earnings from her work with the school did increase annually, but she reported increased monthly expenses since the divorce due to her health-care expenses.

The district court declined to modify David's spousal support because he did not prove a substantial change in circumstances, noting that his choice to retire

> is not as a result of any medical recommendation or as a result of any physical or medical restriction on his ability to work. . . . [E]ven in retirement, [David] enjoys a more favorable financial position than does [Theresa], given his bank and retirement accounts, his pensions, his continued earning capacity and ability to work part time should he desire to do so, and his equity in real estate.

---

[2] David remarried in 2019 and helped pay off his second wife's existing mortgage after selling his home and netting over $150,000; their premarital agreement gives him an equity interest of $75,000 in his current wife's home.

David filed a motion to reconsider, enlarge, or amend the court's ruling, which the district court denied. David now appeals. To defend this appeal, Theresa requests an award of appellate attorney fees.

**II. Analysis.**

A. Modification of Spousal Support.

We review spousal-support-modification decisions de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). But "[w]e will not disturb the trial court's conclusions 'unless there has been a failure to do equity.'" *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013) (citation omitted).

Iowa Code section 598.21C(1) (2019) allows a district court to modify spousal-support orders following a substantial change in circumstances. "The party seeking modification . . . bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances." *Michael*, 839 N.W.2d at 636. Additionally, "the substantial change must not have been within the contemplation of the district court when the decree was entered, and we presume the decree is entered with a 'view to reasonable and ordinary changes that may be likely to occur.'" *Id.* (citation omitted).

David first presents his retirement as a substantial change in circumstances.[3] At the time of the dissolution trial, in pleadings, David argued his

---

[3] At the time of the dissolution-of-marriage trial in 2017, David testified his job was taking a toll on his body and he would be retiring from his UPS job in a year or so but planned to continue working, just at a less physically-demanding job. In response to this record, the trial court noted:

> At this point there is inadequate information in the record to determine what, if any, reduction in spousal support David should experience at the time he retires. It may very well be that, at

job was grueling and he intended to retire from the job before the dissolution proceedings. And in fact, the dissolution court noted:

> [T]he physical demands of [David's] job are beginning to take a toll on his body. His biggest physical concern is that he has had nagging shoulder pain that he fears may require surgery—and if he is not working, even for surgery, he does not get paid. He also reports that he is slowing down at work and is not sure he will be able to continue to work overtime and/or earn performance-related bonuses in the future. This was credible testimony. As for how long David will be able to work in his current job and continue to earn the income to which he has become accustomed, that would require speculation by the court. . . . David indicates that when he does finally retire from UPS he still plans to work, but just in a less physically-demanding job. What this job would be and what it would pay, again, would require speculation.

With this background, the modification court found David did not "establish[] through evidence that the changes which have taken place for the parties were not within the contemplation of the Court when the decree was entered, given the presumption that the decree was entered with the view of reasonable and ordinary changes like[ly] to occur." (Internal quotation marks and citation omitted).

And as to the decision to retire, the district court found David's intent was to retire "because he has worked very hard his whole life and deserves to retire," and not because he wanted to deprive Theresa of support. *See id.* (finding that a modification of support that is driven by a change in earning capacity or earning potential that is motivated by an "improper intent to deprive an obligee of support" is not justified). So, we next look to whether the retirement is voluntary or forced due to health concerns. Our supreme court has long held that a forced retirement can constitute a substantial change in circumstances. *See Toney v. Toney*, 213

---

retirement, David's income is sufficiently reduced to constitute a change in circumstances necessitating a modification action.

N.W. 21, 21–22 (Iowa 1931) (concerning an obligor who hit a mandatory retirement age and was required to retire). Generally, a voluntary retirement, however, is not a substantial change in circumstances. *See, e.g.*, *In re Marriage of Vetternack*, 334 N.W.2d 761, 762–63 (Iowa 1983) (collecting cases to show "any voluntariness in diminished earning capacity has become increasingly an impediment to modification"); *Ellis v. Ellis*, 262 N.W.2d 265, 267–68 (Iowa 1978) ("[O]bligations in and apart from family life compel many persons to maintain employment which may be difficult, undesirable and even physically or mentally painful. . . . When a person's inability to pay alimony or child support is self-inflicted or voluntary, it will not constitute a ground for reduction of future payments."). And here, we agree with the district court that—no matter how reasonable the choice might be—David is retiring voluntarily, just as he contemplated at the time these parties divorced.

David believed his transition to retirement would equate to an earning capacity of $12,000 per year for him, but he offered no detail over what he might be doing. *See Michael*, 839 N.W.2d at 637 (requiring consideration of changes in both the actual income and the person's earning capacity before modifying spousal support). Thus, piggy backing his arguments related to Theresa, we do not find it helpful to his modification request that David chose to retire before health reasons mandated it,[4] could have sought full-time employment at a less physical job but

_____

[4] Here, we note that there are no medical restrictions on David's activity. There are also some discrepancies between the physician's testimony and some of the medical records produced at trial. In Department of Transportation physicals conducted in July and September of 2020, David confirmed he was having no issues with weakness, muscle or joint problems, or neck or back problems, and he checked normal as to his back/spine, extremities/joints, and neurological system

chose not to, and was able to reduce expenses to afford his spousal-support obligation. And we find that David has a more favorable financial position now that he has remarried.[5] These facts do not support a substantial change in circumstances that allows for a modification of the decree. He has therefore not carried his burden to show, by a preponderance of the evidence, that his retirement is a substantial change in circumstances.

David next asserts his spousal-support obligation should be changed because Theresa continues to be underemployed, but this is also not grounds for a modification. As the district court pointed out, the dissolution court in its decree already considered Theresa's employment and imputed a higher earning capacity to her than her actual income (based on full-year employment). Because Theresa's employment was already contemplated within the dissolution decree, it is also not a substantial change in circumstances that warrants a modification in David's spousal support. *See Michael*, 839 N.W.2d at 636.

---

including reflexes. *Cf. In re Marriage of Swan*, 526 N.W.2d 320, 324 (Iowa 1995) (modifying the support obligation of UPS driver where, after filing a worker's compensation claim, he was assigned a physical disability percentage, was given work restrictions, and as a condition of his settlement was required to resign from his job).

[5] David reimbursed his current wife for living expenses with a payment of around $450 per month, and the district court found he had bank account balances worth approximately $88,000 and retirement funds of more than $300,000 in addition to his pensions. According to the modification-trial evidence, David will be paid $2700 from his UPS pension each month and around $2000 from social security when he makes that election.

B. Appellate Attorney Fees.

Theresa requests appellate attorney fees.[6] "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal citation omitted); *accord* Iowa Code § 598.36 ("In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court."). We also consider "whether the party was required to defend the district court's decision on appeal." *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Though Theresa provided an affidavit of her attorney costs, she did not provide an itemized billing record that would allow us to determine the appropriate award. *See Lee v. State*, 906 N.W.2d 186, 196 (Iowa 2018) ("While a party does not need to 'record in great detail how each minute of his time was expended,' he must provide at a minimum sufficient documentation to 'identify the general subject matter of his time expenditures.'" (citation omitted)); *cf. In re Marriage of Dorsey*, No. 22-0141, 2022 WL 10861781, at *2 (Iowa Ct. App. Oct. 19, 2022) (awarding appellate attorney fees when "supported with an affidavit and itemized statement for legal

---

[6] David, in his reply brief, also requested appellate attorney fees. But "[p]arties cannot assert an issue for the first time in a reply brief. When they do, this court will not consider the issue." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996) (internal citation omitted); *accord In re Marriage of Comstock*, No. 15-1570, 2016 WL 4803930, at *9 n.7 (Iowa Ct. App. Sept. 14, 2016) ("In his reply brief, [the appellant] asserts he should be awarded appellate attorney fees. We do not address issues raised for the first time in a party's reply brief."). We do not consider his request.

services"). So, we remand to the district court to determine reasonable appellate attorney fees.

**III. Conclusion.**

Because David's claimed changes in circumstances do not allow a modification of the spousal support, we affirm the district court's denial of his petition to modify. We remand to the district court to determine a reasonable award of appellate attorney fees in favor of Theresa.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**