No. 2--05--0392                                          filed 5/18/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | |
|---|---|
| THE PEOPLE <u>ex rel.</u> THE DEPARTMENT OF TRANSPORTATION, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02--ED--26 |
| | ) | |
| FIRSTAR ILLINOIS, as Trustee under a Trust Agreement dated the 1st of April 1975, and known as Trust Number 410, formerly known as York State Bank and Trust Company, and LOUIS A. GOEBEL, | ) ) ) ) ) ) ) | Honorable |
| | ) | Terence M. Sheen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

_____

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

This appeal concerns proceedings had on a previous remand in this condemnation case. In the initial appeal to this court, the owners of the property (Goebel) claimed that the trial court erred when it (1) admitted into evidence a map that the Illinois Department of Transportation (IDOT) introduced; and (2) allowed IDOT's sole expert to give valuation testimony based on that map. See People ex rel. Department of Transportation v. Firstar Illinois, No. 2--03--0987 (2004) (unpublished order under Supreme Court Rule 23) (IDOT I). We agreed with Goebel, and, thus, we vacated the judgment and remanded the cause for further proceedings. On remand, Goebel stipulated to the

value of the property taken and the damage to the remainder at the lowest amount to which Goebel's experts had testified, and, subsequently, Goebel moved for summary judgment (see 735 ILCS 5/2--1005(c) (West 2002)).  IDOT advised the trial court that its expert had died, and it sought to name a new expert to testify at a new trial.  The trial court granted summary judgment, and IDOT timely appeals.  The issues raised on appeal are (1) whether, on remand, the trial court violated this court's mandate when it refused to reopen discovery and allow IDOT to proceed to a new trial with a new expert; (2) alternatively, whether the trial court abused its discretion in doing so; and (3) whether summary judgment was properly granted.  For the reasons that follow, we affirm.

In 2002, IDOT initiated condemnation proceedings against Goebel for land located in Lombard, Illinois.  Goebel counterclaimed for damage to the remainder of the property as a result of the taking, the trial court granted IDOT's motion for immediate vestment of title, and the trial court set preliminary just compensation at $139,909.  Subsequently, a jury trial was set to determine the fair market value of the property taken and the damage to the remainder.

Before trial, Goebel moved in limine to bar a map (the Eddy map) that IDOT's expert, Fred Tadrowski, used to estimate the value of the property taken and the damage to the remainder.  The trial court reserved ruling on the motion until trial.  At trial, Goebel timely objected to the admission of the Eddy map and Tadrowski's testimony.  The trial court denied the motion, and the jury subsequently awarded Goebel $96,000, which was greater than the amount to which Tadrowski testified but far less than those to which Goebel's two experts attested.  Goebel appealed to this court, contending, among other things, that the trial court erred when it admitted the Eddy map and Tadrowski's testimony.  This court agreed, concluding that the Eddy map lacked a proper foundation, and, thus, that the map and Tadrowski's valuation testimony based on that map were

unreliable. Our mandate indicated that "in accordance with the views expressed in [our] *** Decision[,] the judgment of the trial court is Vacated and Remanded."

On remand, Goebel stipulated to just compensation of $235,000, which was the lowest value that Goebel's experts gave for the property taken and the damage to the remainder. Goebel then moved for summary judgment, contending that, because Tadrowski's valuation testimony could not be considered, no issue of material fact remained. IDOT informed the trial court that Tadrowski had died since the jury trial, and it sought to introduce a new expert to give appraisal testimony at a new trial.

The trial court granted Goebel's motion for summary judgment. In so doing, the trial court first found that this court's mandate did not direct it to reopen discovery and proceed with an actual trial. Rather, the trial court determined that this court reversed the judgment and remanded the cause based on the grounds for Tadrowski's testimony, not the disclosure of Tadrowski's opinions. Because this court did not require the trial court to proceed in any particular manner, the trial court concluded that it had discretion as to whether to allow further discovery, and it refused to exercise that discretion to reopen discovery, for three reasons.

First, it believed that this court would have awarded Goebel just compensation but for the fact that, at trial, Goebel's two experts, whose testimony comprised the only competent valuation evidence, presented a wide range of values for the property taken and the damage to the remainder. Second, it concluded that Goebel would be prejudiced if the trial court reopened discovery, because IDOT easily could have disclosed and presented more than one expert at the first trial. Third, the trial court determined that reopening discovery would prejudice Goebel because, given the extended history of the case, Goebel would have to wait too long to receive just compensation. Because our mandate did not dictate how the trial court should proceed and the trial court refused to reopen

discovery, the court found that summary judgment was proper, because once Goebel stipulated to the lowest competent value of the property taken and the damage to the remainder, no issue as to just compensation remained. This appeal followed.

The first issue we address is whether the trial court violated this court's mandate, which is a question of law that we review de novo. Clemons v. Mechanical Devices Co., 202 Ill. 2d 344, 351-52 (2002). The basic rules on how a trial court should proceed when a cause is remanded are well settled. Clemons, 202 Ill. 2d at 352. After a judgment is reversed and the cause is remanded, the trial court can conduct only such further proceedings as conform to the appellate court's judgment. Roggenbuck v. Breuhaus, 330 Ill. 294, 297 (1928). For example, when the appellate court gives specific directions on how the cause should proceed, the trial court can do nothing except carry out those explicit instructions. Roggenbuck, 330 Ill. at 297. However, if the appellate court's decision fails to give specific instructions, the trial court's judgment is entirely abrogated and the cause, on remand, stands as if no trial had taken place. Kinney v. Lindgren, 373 Ill. 415, 420 (1940). At that point, the trial court has the same control over the record that it had before entering its judgment, and, as such, it may allow the introduction of further evidence as long as such a step is not inconsistent with the appellate court's decision. Kinney, 373 Ill. at 420. Of course, when specific directions are not given, "it is then the duty of the court to which the cause is remanded to examine the reviewing court's opinion and to proceed in conformity with the views expressed in it." Clemons, 202 Ill. 2d at 353.

In this court's mandate, we reversed the judgment and remanded the cause. Our mandate did not provide the trial court with specific instructions on how the cause should proceed. As such, the trial court had to examine our decision and could proceed in any manner not inconsistent with it. IDOT observes that our decision stated that we were remanding "for a new trial." IDOT I, slip order

at 5. However, contrary to IDOT's suggestion, that direction did not require the trial court to conduct an actual trial. When a new trial is ordered, that includes all phases of a trial, including all pretrial matters. Jones v. Petrolane-Cirgas, Inc., 186 Ill. App. 3d 1030, 1033 (1989). Accordingly, if, on remand for a new trial, the trial court finds that no issue of material fact exists, the trial court may enter summary judgment. Jones, 186 Ill. App. 3d at 1033. Thus, we determine that we did not explicitly require the trial court to reopen discovery and allow IDOT to proceed to a new trial with a new expert.

That said, we acknowledge that in some cases the trial court is required to permit the introduction of additional evidence even when the reviewing court has not explicitly so ordered. See Clemons, 202 Ill. 2d at 353.

> "When a judgment is reversed and the cause remanded with directions to proceed in conformity to the opinion then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by subsequent amendment of the pleadings or the introduction of additional evidence, it is the duty of the trial court to permit the cause to be re-docketed and then to permit amendments to be made and evidence to be introduced on the hearing just as if the cause was then being heard for the first time." Roggenbuck, 330 Ill. at 298.

Here, IDOT sets out this rule, emphasizing the portion stating that the trial court has a duty to permit evidence to be introduced. However, until oral argument, IDOT did not address the condition that must be satisfied to invoke that duty, i.e., that "the grounds of reversal are of a character to be obviated by *** the introduction of additional evidence." Roggenbuck, 330 Ill. at 298; see Clemons, 202 Ill. 2d at 353-54 (stating the rule, but emphasizing the condition that must be satisfied). Because IDOT failed to timely provide an argument as to why the rule applies, it has waived its reliance on

the rule. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.

Although that waiver relieves us of any need to resolve the issue definitively, we note that we have grave doubts about the applicability of <u>Roggenbuck</u>.[1] At oral argument, IDOT acknowledged that the grounds of reversal in <u>IDOT I</u> were that the Eddy map and Tadrowski's testimony lacked foundation. Further, IDOT conceded that it would be virtually unable to introduce additional

---

[1] At oral argument, Goebel asserted that <u>Roggenbuck</u> itself is of dubious viability in light of the subsequent enactment of Supreme Court Rule 213 (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002). Although the supreme court recently validated <u>Roggenbuck</u> in a general sense (<u>Clemons</u>, 202 Ill. 2d at 354), we nevertheless see some merit in Goebel's assertion. In any event, we may save that assertion for another day.

evidence to provide such foundation. Thus, it seems to us that IDOT essentially concedes that the grounds of reversal could not be obviated by the introduction of additional evidence, and thus the trial court had no duty to permit such evidence.

At oral argument, IDOT asserted that it could obviate the grounds of reversal in IDOT I by presenting a wholly new expert who would have relied on a wholly new map and would provide wholly new valuation testimony. Although again we decline to say so definitively, we tend to think that Roggenbuck does not function that way. In Clemons, for example, the grounds of reversal in the first appeal were "the incorrect admission of evidence and corresponding jury instruction regarding the [Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 et seq. (West 1994))]." Clemons, 202 Ill. 2d at 354. On remand, the trial court denied the plaintiff's motion to amend his complaint to add a claim under the Wage Act, and the plaintiff appealed. The supreme court noted that, had the plaintiff originally alleged a violation of the Wage Act, the evidence and the instruction would not have been erroneous. Thus, under Roggenbuck, the trial court had the duty to allow the plaintiff to amend his complaint to add a claim under the Wage Act, and it retained discretion as to any other matters on remand. Clemons, 202 Ill. 2d at 354-55.

Here, again, the grounds of reversal in IDOT I were the erroneous admission of the Eddy map and Tadrowski's testimony. Had IDOT introduced evidence to establish foundation, the admission of the map and the testimony would not have been erroneous; thus, the trial court would have had the duty to permit the introduction of such evidence. However, IDOT basically concedes that it has no such evidence. Instead, it seeks to introduce wholly new evidence, independent of the Eddy map and Tadrowski's testimony. The problem is that even if it had originally introduced such new evidence, the admission of the Eddy map and Tadrowski's testimony still would have been

erroneous. Thus, the trial court had no duty to permit IDOT to introduce its new evidence. Rather, such permission was within the court's discretion.

We thus consider whether the trial court abused its discretion in refusing to reopen discovery and allow IDOT to name a new expert. See Clemons, 202 Ill. 2d at 352. The trial court has power over the conduct of discovery, and its decision will not be disturbed on appeal absent an abuse of discretion. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 352 (1998).

Here, after reviewing the grounds for the trial court's ruling, we cannot conclude that the trial court abused its discretion when it refused to reopen discovery. First, the trial court noted that new expert testimony was unnecessary because Goebel presented two experts who testified about the property's fair market value. Under these circumstances, we agree that no other valuation testimony was needed, as the trial court already had competent evidence upon which to draw in fashioning an appropriate amount of damages. To be sure, the fact that none of the remaining evidence was IDOT's worked some prejudice to IDOT. However, as a second basis for refusing to reopen discovery, the trial court determined that reopening discovery would work a prejudice to Goebel, and we agree. When the suit began, IDOT easily could have named more than one expert, but it chose not to do so. Thus, IDOT took the chance that, if Tadrowski were discredited, it would be left with nothing. As it was IDOT that took that risk, the trial court could have reasonably determined that Goebel should not be made to pay for it. Lastly, the trial court concluded that reopening discovery would violate Goebel's right to receive just compensation in a relatively expeditious manner. Again, we agree. As Goebel notes, when a condemnation suit continues for several years, the right to just compensation is infringed, even when the owner receives interest on the property's fair market value. See Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 81 L. Ed. 2d 1, 104 S. Ct. 2187 (1984).

Because the trial court did not abuse its discretion when it refused to reopen discovery and allow IDOT to present new expert testimony, the next issue we address is whether summary judgment was proper. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2002). A triable issue precluding summary judgment exists where material facts are disputed or where the material facts are undisputed but reasonable people might draw different inferences from the undisputed facts. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). We review de novo the entry of summary judgment. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

Here, after this court deemed Tadrowski's testimony incompetent, the only competent valuation evidence presented was that of Goebel's two experts. When only one party presents competent evidence on a property's value, a trial court may enter judgment for just compensation at an amount within the range offered by the party submitting competent evidence. See generally Southwestern Illinois Development Authority v. Al-Muhajirum, 348 Ill. App. 3d 398 (2004). On remand, Goebel stipulated to just compensation at the lowest value to which their experts testified. As the trial court noted, but for that stipulation, Goebel would have insisted that just compensation was the highest amount assigned by their experts, and, in contrast, IDOT would have argued that just compensation was the lowest such value. Thus, once the trial court refused to reopen discovery and Goebel stipulated to the value on which IDOT would have insisted, no issue as to just compensation remained, and summary judgment was proper.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

CALLUM, J., concurs.

JUSTICE O'MALLEY, dissenting:

Unfortunately, this case, which we are reviewing for the second time on appeal, seems to have been rightly decided by the trial court in the first place. As the trial court originally aptly noted, the problems with the Eddy map cast doubt on the credibility of the map and were proper topics for cross-examination but did not affect the admissibility of the map. However, without even a mention of that point or of the highly deferential abuse of discretion standard of review that should be applied to the trial court's decision to deny the motion in limine, this court vacated the trial court's decision and remanded the cause for a new trial. We are now bound by that decision and cannot revisit it. Bailey v. Robison, 244 Ill. 16, 22 (1910) ("although the [appellate] court was of opinion [the issue] had been decided wrong[ly] on the first appeal, it was bound to follow its first opinion").

The majority here states that, under its reading of Roggenbuck, the trial court on remand would have been without discretion to deny the admission of evidence that would have cured the supposed lack of foundation for the Eddy map and Tadrowski's testimony. However, the majority concludes that the trial court nonetheless was not duty-bound to allow IDOT's evidence, because IDOT sought to introduce wholly new evidence, independent of the Eddy map and Tadrowski's testimony. Slip op. at 6. I disagree with the majority, and, to the extent IDOT concedes this point (slip op. at 6), I disagree with its concession.[2] As the majority sees it, IDOT improperly sought to replace the Eddy map

---

[2] I say I disagree with IDOT's concession because I think the problems with the Eddy map might very easily be cured with additional evidence. For example, one of the problems

rather than remedy or cure the problem of the lack of foundation for the Eddy map and the expert testimony based on the Eddy map. In other words, the majority sees the problem as the Eddy map, and replacing the Eddy map does not cure the Eddy map. To me the problem is a lack of foundation for the expert opinion, and that can be cured by coming up with a whole new map that does not suffer from the problems identified with the Eddy map.[3] Indeed, it appears that the majority creates an insurmountable problem by framing the issue as it does. Suppose an appellate court remanded a case because it felt that certain photographs admitted into evidence were too blurry or unclear to give an accurate depiction of a particular subject matter. In such a situation, the majority would not allow the parties to admit different, clearer photographs of the exact same subject matter because the different photographs would not cure the original photographs. The majority would hold that on remand, the trial court would have to allow into evidence the same photographs if they could be made clearer but not allow different photographs that portrayed clear images.

_____

this court identified was that the person who made the field notes used to create the map did not testify, thus creating a hearsay problem. That problem could be easily cured by calling that person as a witness. Thus, even if I agreed with the majority's definition of the problem, which, as discussed just below, I do not, I would disagree with its conclusion that the parties are incapable of curing that problem on remand.

   [3] To be sure, that is how IDOT sees the issue. I doubt IDOT ever considered trying to cure the Eddy map itself until it was asked at oral argument whether it was possible to cure the map. Hence, the oral argument concession to which the majority refers. Slip op. at 6.

Contrary to the majority's approach, I see the problem identified on appeal as being that the Eddy map was ruled inadmissible and thus IDOT had no foundation for its expert testimony.  This problem could be cured by IDOT's introducing new foundation, such as a new map for an expert's testimony, by IDOT's introducing further foundation to establish the admissibility of the Eddy map, or by IDOT's introducing new expert testimony with proper foundation.  Therefore, I believe we must address Roggenbuck.[4]

---

[4] I disagree with the majority's statement that IDOT has waived its reliance on Roggenbuck.  Slip op. at 5-6.  Though IDOT does not use the specific phrase the majority quotes from Roggenbuck (slip op. at 5-6), it argues for several pages in its briefs that Roggenbuck applies and that the trial court was bound to hear evidence on the value of the property because that was the only issue remaining on remand.

In Roggenbuck, the appellate court reversed a trial court ruling in favor of the defendants in a breach of contract claim. Roggenbuck, 330 Ill. at 295-96. However, it held that it was "unable to fix the damages and enter judgment in the Appellate Court" because "it was impossible to determine the amount of the damages from the evidence in the record." Roggenbuck, 330 Ill. at 296. Therefore, the appellate court remanded the cause for further proceedings not inconsistent with the views set forth in the opinion. Roggenbuck, 330 Ill. at 296. On remand, the trial court heard new evidence concerning the damages suffered by the plaintiff. Roggenbuck, 330 Ill. at 297. On subsequent appeal, the supreme court ruled that, by virtue of the appellate court opinion, the trial court was duty-bound to consider the plaintiff's new evidence of damages. Roggenbuck, 330 Ill. at 297-300. The supreme court first noted that, when no specific directions are given on remand, "it must be determined from the nature of the case what further proceedings will be proper and not inconsistent with the [appellate court] opinion." Roggenbuck, 330 Ill. at 297-98. It then examined the full context of the appellate court opinion to determine what it directed the trial court to do on remand:

"The court expressly determined that it was impossible to enter judgment [on appeal] because the amount of the damages was not sufficiently shown by the evidence. How, then, could the [trial] court enter a judgment on its record containing only the same evidence? It could not do so and did not try to do so but recognized that the introduction of evidence was necessary to enable it to render judgment [as instructed]." Roggenbuck, 330 Ill. at 299.

In Roggenbuck, the appellate court reversed the cause and directed the trial court to conduct further proceedings in order to remedy the problem that caused reversal. The only

way for the trial court to comply with that order was to allow new evidence of damages. Thus, the appellate court impliedly directed the trial court to allow new evidence, or, put another way, "it appear[ed] from the opinion that the grounds of reversal [were] of a character to be obviated by *** the introduction of additional evidence." Roggenbuck, 330 Ill. at 298.

As the majority notes (slip op. at 5), Roggenbuck holds that: "[w]hen a judgment is reversed and the cause remanded with directions to proceed in conformity to the opinion then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by *** the introduction of additional evidence, it is the duty of the trial court *** to permit amendments to be made and evidence to be introduced on the hearing just as if the cause was then being heard for the first time." Roggenbuck, 330 Ill. at 298. However, the majority interprets this rule as requiring the trial court to allow new evidence when it appears from the opinion that the grounds of reversal are of a character "that could be obviated" by new evidence, as opposed to the grounds for reversal being of a character "to be obviated" by new evidence. The difference is crucial. Under the majority's interpretation, a trial court must allow a litigant on remand to introduce any evidence that might cure a problem identified on appeal. Under my interpretation, a trial court must allow new evidence only when it appears that the court of review impliedly directed that the trial court hear the new evidence in order to remedy the problem, or, put another way, the problem is "to be obviated" by new evidence.

If I were to follow the holding of Roggenbuck as I see it, I would hold that this court's original order vacated the original judgment because it found the Eddy map and Tadrowski's testimony improperly admitted. It ordered further proceedings, but it did not explicitly direct

˘14˘

the trial court to admit new evidence to cure the problem that caused reversal. Further, the introduction of new evidence is not required, as it was in Roggenbuck, to comply with the directives of this court's previous opinion; while the trial court in Roggenbuck had no way of determining damages as ordered without considering new evidence, the trial court here could conduct a new trial without considering IDOT's additional evidence. Therefore I do not believe that the previous opinion of this court impliedly directed new evidence to be considered on remand. In my view, then, the Roggenbuck rule does not apply, and the trial court had discretion as to whether to allow IDOT to present new evidence.

However, as the majority notes, our supreme court revisited the Roggenbuck rule in Clemons, 202 Ill. 2d at 354 (Clemons II). In Clemons, the plaintiff presented evidence and argument supporting, and the trial court tendered jury instructions regarding, a Wage Act claim, despite the fact that the plaintiff did not include a Wage Act claim in his complaint. Clemons v. Mechanical Devices Co., 184 Ill. 2d 328, 333-34 (1998) (Clemons I). The jury found in favor of the plaintiff, and the defendant appealed. Clemons I, 184 Ill. 2d at 334. The defendant's appeal reached the supreme court, which reversed and remanded for a new trial. Clemons I, 184 Ill. 2d at 338. The supreme court observed that the plaintiff's amended complaint, which was filed after the close of evidence, did not refer in any way to the Wage Act. Clemons I, 184 Ill. 2d at 335. It noted that "the alleged violation of the Wage Act was not relevant to [the] plaintiff's cause of action, which was based on an entirely different theory." Clemons I, 184 Ill. 2d at 337. The supreme court concluded that the "plaintiff could not attempt to put forth what was in essence a new and separate cause of action" (Clemons I, 184 Ill. 2d at 337-38), and it held as follows:

˘15˘

"For these reasons, we believe that the trial court erred in allowing [the] plaintiff to submit evidence of [the] defendant's alleged violation of the Wage Act and instructing the jury on that matter. Moreover, the introduction of this evidence and the use of the instructions were clearly prejudicial to [the] defendant, and we agree with the appellate court that a new trial is necessary in this case."

On remand, the plaintiff filed a motion to amend his complaint to add a count under the Wage Act, the trial court denied that motion, the plaintiff appealed, and the case again reached the supreme court. Clemons II, 202 Ill. 2d at 348. The supreme court cited the rule from Roggenbuck and held that "it was the duty of the trial court to allow [the] plaintiff to amend his complaint to add a count under the Wage Act." Clemons II, 202 Ill. 2d at 354. The majority reasoned that "the grounds for reversal in Clemons I were the incorrect admission of evidence and corresponding jury instruction regarding the Wage Act." Clemons II, 202 Ill. 2d at 354. It noted that those grounds "only constituted prejudicial error because plaintiff did not allege a violation of the Wage Act" (emphasis in original) and thus that the " 'grounds of reversal are of a character to be obviated by subsequent amendment of the pleadings.' " Clemons II, 202 Ill. 2d at 354, quoting Roggenbuck, 330 Ill. at 298.

Describing what the majority had done, the dissent in Clemons II said that the majority found that Clemons I required the trial court to allow an amendment despite the fact that Clemons I did not "order or even suggest that [the plaintiff] be allowed to amend his complaint." Clemons II, 202 Ill. 2d at 360 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.). The Clemons II majority responded to the dissent's observation by acknowledging that Clemons I did not explicitly require that the trial court allow amendment but did not respond to the dissent's observation that the Clemons I court did not even

suggest allowing amendment. <u>Clemons II</u>, 202 Ill. 2d at 353-55. The majority in <u>Clemons II</u> seemed to interpret the rule from <u>Roggenbuck</u> in the same way the majority here reads it. See <u>Clemons II</u>, 202 Ill. 2d at 354 ("[h]ad plaintiff alleged a Wage Act violation, the admission of evidence regarding the Wage Act[,which formed the basis of reversal on appeal,] *** would not have been erroneous"). In fact, the majority in <u>Clemons II</u> even acknowledged the expansiveness of the rule it applied by noting that, under its rule, where a reviewing court orders a new trial without limitation or further specific direction, a party's ability to amend its pleadings or offer new evidence to correct any problems identified on appeal is unfettered so long as the statute of limitations for a new complaint has not expired. See <u>Clemons II</u>, 202 Ill. 2d at 355 (rejecting argument that its holding would lead to an unfair, open-ended exposure to liability, because a new cause of action filed after the expiration of a limitations period must meet the requirements for relating back to the time of the original complaint).

My personal view is that, when a mistake is identified on appeal and the cause remanded, the proceedings in the trial court are rewound to the point when the mistake was made, and the cause moves forward again under the new instructions from the court of review. Consistent with what would be my interpretation of <u>Roggenbuck</u>, the trial court must abide any direction, explicit or implicit, from the reviewing court as to how further to conduct those proceedings, but, aside from such direction, the trial court retains discretion over evidentiary and pleading matters to the same extent as when the cause was originally before it. If <u>Clemons II</u> had not dictated otherwise, I would hold that a party does not enjoy unfettered ability to remedy errors identified on appeal except to the extent the reviewing court so ordered in remanding the cause.

Applying my interpretation of <u>Roggenbuck</u>, the trial court here received no direction regarding new evidence from this court's previous ruling and was therefore left to its discretion to grant or deny IDOT's request to present new evidence. Under this interpretation, I would agree with the majority, albeit for different reasons, that the trial court did not abuse its discretion in refusing to reopen discovery and allow IDOT to name a new expert. The majority relies on the fact that "new expert testimony was unnecessary because Goebel presented two experts" (slip op. at 7-8) and thus "the trial court already had competent evidence" (slip op. at 8). I disagree with this approach. It is true that the trial court had competent evidence upon which to base its damages finding, but that evidence was solely in the form of Goebel's witnesses. "Competent" evidence does not displace our adversarial system, which holds as one of its most basic tenets that both sides of a dispute are allowed to present evidence to support their positions. While there are valid reasons for the trial court to have excluded IDOT's proposed evidence, the fact that Goebel presented competent evidence on the same subject is not one of those valid reasons. The majority seems to acknowledge as much in its monumental understatement that "the fact that none of the remaining evidence was IDOT's worked some prejudice to IDOT." Slip op. at 8. I agree with the other two bases the majority offers to support its holding that the trial court did not abuse its discretion in refusing to reopen discovery.

All of that said, however, my personal view is not what binds this court, and, pursuant to <u>Clemons II</u>, it is not the law. Under the majority decision in <u>Clemons II</u>, the rule from <u>Roggenbuck</u> has been expanded so that a trial court is duty-bound to consider new evidence when such evidence would remedy the cause for reversal, regardless of whether the reviewing court suggested that such evidence was to be considered. Therefore, I would

reverse and remand the cause with instructions that the trial court allow IDOT to present any evidence, including additional expert testimony and additional foundation for that testimony, that might cure the problem that caused vacation in the first place.

In closing, I note that, under both the majority's and my interpretation of Roggenbuck, and under the supreme court's decision in Clemons II, the rule discussed herein is triggered only if the appellate court provides insufficiently specific direction to the trial court on remand.  Therefore, in order to avoid problems such as those we see here, we would be well-advised to give more specific direction to the trial court in future cases in which remand is required.