2023 IL App (2d) 220088-U
No. 2-22-0088
Order filed May 9, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| CENTRUE BANK and KWAME RAOUL, successor to LISA MADIGAN, in Her Official Capacity as Attorney General of the State of Illinois, | ) ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 08-CH-0871 |
| LYLE L. VOGA, LOIS ENGLERT, SHIRLEY BUSCH, LINDA JOAN FRISBEE and ROBERT DUFAU, | ) ) ) ) | |
| Defendants, | ) ) | |
| (Lyle L. Voga, Defendant and Counterplaintiff-Appellant; Larry Voga, Defendant and Counterdefendant, Lois Englert, and Linda Joan Frisbee, Defendants and Counterdefendants-Appellees | ) ) ) ) ) ) | Honorable Judge Robert P. Pilmer, Judge, Presiding |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Counterplaintiff Lyle Voga failed to show that the trial court abused its discretion in denying his request for a new trial. Any issues involving counterdefendant Linda Frisbee's fiduciary duties are moot, and the trial court properly accounted for the instant trust.

¶ 2 Defendant and counterplaintiff Lyle Voga (Lyle) appeals the trial court's September 30, 2021, adjudication of his amended countercomplaint, which sought an accounting of trust assets, an apportionment of liability for estate taxes, and a finding that defendants and counterdefendants Larry Voga (Larry) and Lois Englert (Lois) had breached their fiduciary duties as co-trustees. Lyle argues that the trial court erred in: 1) failing to hold a new trial as to the remaining counts of his amended countercomplaint; 2) improperly ruling on matters that were not before the court; and 3) failing to "[c]orrectly [a]ccount to the Voga [t]rust." We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 This case comes before us for the third time. The events leading up to *Centrue Bank v. Voga*, 2017 IL App (2d) 160690 (*Voga I*) involved a revocable living trust (Trust) executed by Lyle's late father, Leroy Voga (Leroy), in January 2003 for the benefit of his children: Lyle, Larry, Lois, and defendant and counterdefendant Linda Frisbee (Linda). The Trust designated Leroy as trustee while naming Linda primary successor trustee.

¶ 5 The trust provided that Lyle, Linda, and Larry would receive parcels of real property upon Leroy's death, and that Shirley Busch (Shirley) would receive a life estate in Leroy's Arizona residence (Arizona Property). The trust did not provide Lois with any real estate. In January 2003, Leroy executed a durable power of attorney (Power of Attorney), designating Linda as his agent. In September 2006, Linda, acting as Leroy's agent, executed an amendment to the Trust (Amendment), bequeathing the fair market value of the farm real estate previously granted to Linda and Larry to Lois upon Leroy's death.

¶ 6 In February 2007, the siblings executed an agreement designed to make themselves co-trustees of the Trust. Under this newfound authority, Lyle and Larry demanded Plaintiff Centrue Bank (Centrue) to turn over certain Trust property, leading Centrue to file an interpleader action

(see 735 ILCS 5/2-409 (West 2006)) against the siblings, Shirley, and a third party who is no longer involved with these proceedings.

¶ 7     In August 2010, Lyle filed a 13-count countercomplaint against Larry, Lois, and Linda. Larry and Lois answered the countercomplaint and filed affirmative defenses before Lyle filed an additional count against Linda.

¶ 8     In June 2011, Lyle filed a motion under section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2010)) for judgment on the pleadings on count X of his countercomplaint, which argued that the Amendment was void. In July 2011, the court granted Lyle's motion. In January 2012, Linda filed a motion to vacate the court's July 2011 order, which was granted.

¶ 9     In June 2012, Larry and Lois filed a joint motion under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2012)), seeking dismissal of count X of Lyle's countercomplaint and a declaratory judgment finding that Lyle forfeited any interest in the Trust by operation of the Trust's no-contest clause. After a hearing, the trial court dismissed count X of Lyle's countercomplaint but denied Lois's and Larry's request for a declaratory judgment.

¶ 10    In February 2013, Lyle filed a five-count amended countercomplaint against Larry, Linda, and Lois. Count I sought an accounting of the Trust's assets, count II sought an apportionment of liability for estate taxes, and count III alleged a breach of fiduciary duty by Larry and Lois. Counts IV and V of the amended countercomplaint argued that the Amendment was void because it did not comply with certain statutory requirements.

¶ 11    After the court noted that it had already disposed of counts IV and V of the amended countercomplaint through its previous adjudication of count X of Lyle's initial countercomplaint, a bench trial was held to resolve the remaining counts of the amended countercomplaint. In June

and July 2016, the court adjudicated the remaining counts. Regarding counts I and II, the court calculated the total value of the Trust's assets for tax purposes and valued each sibling's assets and resulting tax liabilities. Concerning count III, the court determined that Lyle's breach-of-fiduciary-duty claim was defeated by his own "unreasonable conduct." Following the court's denial of Lyle's motion to reconsider, Lyle filed his appeal in *Voga I*.

¶ 12     In *Voga I*, we reversed the trial court's dismissal of count X (which Lyle later repurposed as count V of his amended countercomplaint). We also reversed the court's July 2016 judgment as to counts I through III of the amended countercomplaint, which had relied on erroneous findings as to count X. *Voga*, 2017 IL App (2d) 160690, ¶¶ 62-63. Specifically, in addressing count II of the amended countercomplaint, we provided that "we remand for a *new trial* on count II as well." (Emphasis added.) *Id.*, ¶ 64.

¶ 13     Following our disposition of *Voga I*, Lyle and Linda filed cross motions for partial summary judgment as to count V of the amended countercomplaint. On August 18, 2018, the court granted partial summary judgment in Linda's favor, finding that the Power of Attorney allowed her to validly execute the September 2006 Amendment. On January 3, 2019, Lois filed a motion to obtain a final judgment as to counts I through III of Lyle's amended countercomplaint. On January 10, 2019, the trial court granted Lois's motion. Lyle timely appealed the court's January 2019 order while Lois initiated collection proceedings against him.

¶ 14     In *Centrue Bank v. Voga*, 2020 IL App (2d) 190108 (*Voga II*), we held that the Amendment was void pursuant to section 2-9 of the Illinois Power of Attorney Act (Act). 755 ILCS 45/2-9 (West 2006); *Id.*, ¶ 54. Consequently, we reversed the trial court's dismissal of count V of the amended countercomplaint and vacated the trial court's order granting partial summary judgment in Linda's favor. *Id.* We remanded "for further proceedings consistent with [our] opinion." *Id.*,

¶ 56.[1]

¶ 15    On April 29, 2021, after the case had been once again remanded, Lyle filed his motion to reopen the proofs. In the motion, Lyle requested a new trial, or, in the alternative, to reopen the proofs to introduce several cancelled checks. According to Lyle, these cancelled checks were relevant in determining whether certain Trust payments constituted personal payments made to Lyle, as pertinent to count I of his amended countercomplaint. In the motion, Lyle further argued that our prior mandates in this matter required a new trial. On May 13, 2021, Lois responded to the motion, arguing that our earlier decisions did not mandate a new trial and that "[r]eopening proofs to allow evidence that was available at the time of trial would be a clear abuse of th[e] [c]ourt's discretion."

¶ 16    On June 29, 2021, the trial court held its hearing on Lyle's motion to reopen the proofs. During the hearing, Lyle argued that "[t]he majority of the case has been settled for the specific distributions underneath the [T]rust now that the [A]mendment has been found void." However, Lyle argued that, in order to adjudicate the remaining claims of his amended countercomplaint, the court still needed to value the Trust's residuary and determine "how taxes should be allocated."

¶ 17    Concerning our decision in *Voga I*, the court asked Lyle, "So wasn't the direction [of the appellate court] that I conduct a new trial as to [c]ounts [I, II, III, and V]?" Lyle eventually responded, "I think so, judge." Lyle continued, arguing that, because the trial court's July 2016 judgment had partly relied on the voided Amendment, a new trial was necessary so that the court could "have trial testimony to address the [remaining] counts." In essence, Lyle reasoned that the

---

[1] Our decision also resolved count IV of Lyle's amended countercomplaint, as counts IV and V collectively argued that the power of attorney did not enable Linda to amend the Trust.

prior trial had "operate[d] under the same framework *** that the trust [A]mendment [was] still valid," meaning a new trial was necessary. The court began to ask whether Lyle expected there to be any differences between the evidence adduced at the parties' prior trial and any potential evidence adduced at a new trial, aside from the cancelled checks. Lyle responded,

> "I think the answers would have been the same, but I can tell at least from my own
> personal position, my questions would have been different which would result in different
> testimony, not inconsistent, but I would have asked different questions."

The court then asked Lyle why he should be entitled to now introduce the cancelled checks, as they were not previously produced when discovery had been already opened. Lyle responded, arguing that, here, the "elements of reopening proofs" allowed for him to introduce the cancelled checks. Lyle also argued that, regardless of the cancelled checks, a new trial would yield "different," pertinent testimony.

¶ 18    Lois weighed in, seemingly suggesting that our decision in *Voga I* may have warranted a new trial if the validity of the Amendment were still at issue, but, because that issue was subsequently addressed in *Voga II*, "there is no need for a second trial" to determine the sole question of "what the [Trust] residual is and how taxes should be allocated." Otherwise put, Lois posited that "[t]here [were] no new issues in the case. It is simply a different math problem." According to Lois, there were no evidentiary issues present in the first trial, and Lyle was improperly seeking "a second bite of the apple." In support of this contention, Lois recalled that, back in December 2013, she had "propounded a notice to produce *** asking [for] the exact documents that Lyle is now producing," the "checks from prior to 2009." Consequently, Lois reasoned that the cancelled checks could not be characterized as "newly[ ]discovered evidence" to otherwise justify reopening the proofs. The court eventually asked Lyle, "[H]ow is a lack of

diligence in producing records pre-2016, how does that translate into allowing these new records to be used [in] a [new] trial?" Lyle responded, "[I]f we are to follow the Second District mandate of a new trial, I don't know that your Honor would allow these most recent documents to come into evidence. That would be up to your Honor."

¶ 19    Following the parties' arguments, the trial court noted that, "with respect to the motion to reopen [the] proof[s]," the first issue to consider was "whether or not [Lyle] ha[d] a reasonable excuse for failing to present the [cancelled checks] during the course of the trial." The court found "no reasonable excuse" for Lyle's "fail[ure] to present the [checks] prior to trial or at the time of trial." The court next considered "whether [Lois and Linda] would be surprised or unfairly prejudiced" in the event it granted Lyle's motion, eventually answering that question in the affirmative. Finally, the court considered whether the cancelled checks were integral to the matter. After finding that the checks were "not of the utmost importance" to Lyle's case, the court denied Lyle's motion to reopen the proofs.

¶ 20    After denying Lyle's motion, the court asked the parties whether they were ready to argue "on all remaining issues" in the case. They indicated they were. During his arguments, Lyle described how, after Leroy passed away, he "continued to farm the subject farmland *** by a fifty-fifty crop share agreement." Referencing at least one cancelled check that had purportedly been a prior trial exhibit, Lyle suggested that, at the conclusion of the prior trial, certain Trust payments had improperly been allocated as his own "personal expenses," when, in reality, those payments were attributable to the Trust as part of "the [T]rust's 50 percent share of the farm expenses." Lyle further argued that certain attorneys' fees in the prior litigation had been wrongly "charged to [himself]," as the fees in question resulted from an attorney's prior, collective representation of Lyle, Linda, Lois, and Larry before the parties "all split up" and "[got] their own representation."

¶ 21 The court asked, "So you said, you know, that you just indicated that Lyle's expenses were part of the [T]rust expenses, but isn't that getting into the issue of reopening the proofs?" Lyle answered, "Not to the extent that the evidence is already within the record, judge, and so I did go over that rather quickly." Lyle later indicated that following the prior bench trial, he had "filed" evidence of the attorneys' fees to "rebut trial testimony" that the fees "should be credited a hundred percent to Lyle."

¶ 22 On September 30, 2021, the trial court entered an order resolving the amended countercomplaint. In the order, the court noted that "[c]ounsel for the parties contend that as a result of the earlier trial, the court has already heard all of the testimony from the parties and witnesses, and received all of the evidence therefore it can rule based on that evidence, following the direction of the Appellate Court." The court briefly outlined counts I through III of Lyle's amended countercomplaint, which had remained pending after our decision in *Voga II*. While discussing count III, the court first noted:

"Count III alleges that Larry and Lois breached their fiduciary dut[ies] to Lyle. As more fully set forth herein, the court finds that Lyle, Larry, and Lois each had a fiduciary duty to the others, and that each breached their fiduciary duty to the others. As a result of accounting [*sic*] undertaken herein, Lyle's breach of his fiduciary duty to the others, and the lack of any damages suffered by Lyle, the court finds he is not entitled to any relief under [c]ount III. The court further finds[] that Linda owed a similar fiduciary duty to the others, but there was no evidence that she, either as the successor Trustee or as co-Trustee, breached her fiduciary duty to the others."

¶ 23 After finding that our decision in *Voga II* rendered counts IV and V moot, the court made certain findings "[b]ased upon the evidence originally heard at trial," "in light of [our] decisions"

in *Voga I* and *Voga II*. These findings generally included information concerning the Trust's creation, assets, language, and distributions.

¶ 24    While completing its accounting of the Trust pursuant to count I of the amended countercomplaint, the court found that Lois was entitled to the Arizona property as part of her share of the Trust's residuary. Additionally, having found that Lyle received $11,818.32 more than what he was entitled to under the Trust, and that Lois was entitled to an additional $11,818.32 from the residuary, the court ordered Lyle to pay this amount directly to Lois, "[r]ather than requiring Lyle to pay his overpayment to the Trust so that it w[ould] be distributed to Lois." Aside from that, the September 30, 2021, order "set forth all of the various transactions which occurred following the death of Leroy Voga as they pertain[ed] to the Trust, and allocate[d] the responsibility for those transactions" amongst the parties.

¶ 25    Concerning count II, the court found the "proportionate share[s] of Federal Estate Taxes owed by each individual or the Trust, the payments made by each person or the Trust, and any balance of the original tax obligation which may be due and owing."

¶ 26    Concerning count III, the court found that, as co-trustees, Lyle, Larry, Lois, and Linda all owed "a fiduciary duty to the others to faithfully carry out the terms of the Trust Agreement, manage and preserve the assets of the Trust," and to make certain distributions under the Trust. While the court found that Lyle, Larry, and Lois all individually breached their fiduciary duties, it noted that there was "no evidence that Linda undertook any action as co-trustee which would have been a breach of her fiduciary duty to the others." According to the court, Linda was "the only one who did not receive something to which she was not entitled. It appeared that at all times she acted in good faith in dealing with her siblings."

¶ 27    On October 27, 2021, Lyle filed his motion to reconsider, once more arguing that *Voga I*

required a new trial. Lyle also disputed the trial court's finding that the parties all believed that the court already heard any necessary evidence to fully adjudicate the amended countercomplaint. Lyle next argued that the trial court erred in finding that Linda did not breach any fiduciary duties owed to her siblings, arguing that such a finding was improper, as "there was no count before [the court] alleging that Linda *** had breach [*sic*] any fiduciary duty owed to the other Trust beneficiaries." Lastly, Lyle disputed the trial court's accounting of the Trust, arguing that the court had no basis to issue a personal judgment against himself to be paid to Lois. On February 17, 2022, the trial court denied Lyle's motion to reconsider. Lyle timely appeals.

¶ 28                                    II. ANALYSIS

¶ 29      Lyle raises several arguments attacking the trial court's denial of his request for a new trial, as well as its September 30, 2021, adjudication of the remaining counts of his amended countercomplaint. First, Lyle argues that the trial court improperly denied him a new trial. Second, Lyle argues that, in making its September 30, 2021, findings, the trial court improperly ruled on matters that were neither in evidence nor before the court. Third, Lyle argues that the court failed to correctly account for the Trust. For the reasons below, we reject all of these contentions.

¶ 30                                    A. New Trial

¶ 31      First, Lyle has not shown that the trial court abused its discretion in denying his request for a new trial. "This court applies an abuse of discretion standard of review in considering a trial court's ruling on a motion for a new trial." *Unitrin Preferred Insurance Co. v. Dobra*, 2013 IL App (1st) 121364, ¶ 17. This is the most deferential standard of review, in which reversal is only warranted where the trial court has acted arbitrarily, without conscientious judgment, or outside the bounds of reason. *Pierce v. Cherukuri*, 2022 IL App (1st) 210339, ¶ 19. Lyle raises two reasons why he believes the trial court erred in denying him a new trial. First, Lyle argues that our language

in *Voga I* explicitly required the trial court to hold a new trial as to the remaining contentions in his amended countercomplaint. Second, Lyle argues that, due to certain evidentiary concerns arising from the first trial, the court was required to grant him a second trial. For the reasons below, we reject both contentions.

¶ 32                                  1. Effect of *Voga I*

¶ 33    First, *Voga I* did not explicitly require the trial court to hold a new trial. "After a judgment is reversed and the cause is remanded, the trial court can hold only such further proceedings as conform to the judgment of the appellate tribunal." *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 352-53. For instance, "[w]hen a judgment of a trial court is reversed and the cause is remanded by this court with specific directions as to the action to be taken, it is the duty of the trial court to follow those directions." *Bjork v. Draper*, 404 Ill. App. 3d 493, 502 (2010). "If specific directions are given, nothing can be done except [to] carry out those directions." *Roggenbuck v. Breuhaus*, 330 Ill. 294, 297 (1928). On the other hand, "[i]f no specific directions are given, it must be determined from the nature of the case what further proceedings will be proper and not inconsistent with [the reviewing court's decision]." *Id.* at 297-98. Where a reviewing court has reversed and remanded a matter with no specific instructions, "the trial court's judgment is entirely abrogated and the cause, on remand, stands as if no trial had taken place." *People ex rel. Department of Transportation v. Firstar Illinois*, 365 Ill. App. 3d 936, 939 (2006). "At that point, the trial court has the same control over the record that it had before entering its judgment, and, as such, it may allow the introduction of further evidence as long as such a step is not inconsistent with the appellate court's decision." *Id*. The question of whether a trial court has properly followed a reviewing court's mandate is reviewed *de novo. Clemons*, 202 Ill. 2d at 351.

¶ 34    Here, Lyle argues that he is entitled to a new trial because, in *Voga I*, we "clearly remanded the case back to the trial court for a new trial on [c]ounts I, II[,] and III" of his amended countercomplaint. Otherwise put, Lyle contends that our mandate included specific directions that a new trial was absolutely necessary. On the other hand, both Lois and Linda argue that, despite our language in *Voga I*, no new trial was required because no material facts remained in dispute.

¶ 35    We agree with Linda and Lois. Where a reviewing court's mandate provides that a matter should be remanded for a new trial, the word "trial" should be read to encompass "all phases of a trial, including all pretrial matters." *Firstar,* 365 Ill. App. 3d at 940. Consequently, a direction to remand for a new trial does not provide a trial court with specific instructions on how a cause should proceed on remand. *Id.* For this reason, "if, on remand for a new trial, the trial court finds that no issue of material fact exists, the trial court may enter summary judgment" while remaining consistent with the reviewing court's mandate. *Id.*

¶ 36    Here, Lyle is correct that *Voga I* included language suggesting that the matter should be remanded for new trial. 2017 IL App (2d) 160690, ¶ 64. However, pursuant to *Firstar*, this general instruction did not necessarily require the trial court to actually conduct a new trial. *Firstar*, 365 Ill. App. 3d at 940. Instead, the trial court had discretion to enter summary judgment for any party if it found that no issue of material fact existed. Here, the trial court found no issues of material fact, so summary judgment was appropriate.

¶ 37    Lyle nonetheless argues that we should reverse the trial court's September 30, 2021, order because the order inaccurately represented his position as to the necessity of a new trial. Specifically, Lyle argues:

> "In its order of September 30, 2021, the trial court held that '[c]ounsel for the parties
> contend that as a result of the earlier trial, the court has already heard all of the testimony

from the parties and witnesses, and received all of the evidence therefore it can rule based on that evidence, following direction of the Appellate Court.' Not only is this finding in direct contradiction to what the appellate court had directed, *** it grossly misrepresents Lyle Voga's position *** and fails to address the fact that the earlier judgment of the trial court was entirely abrogated and that the cause stands as if no trial had even occurred."

¶ 38　　As a preliminary note, we do not believe that the trial court's referenced finding was an abuse of discretion, as Lyle had previously admitted to the court that any testimony in a hypothetical new trial would likely be the same or consistent with the testimony adduced at the parties' earlier trial. Still, even if we were to accept that the trial court misrepresented Lyle's stance on the issue, Lyle provides us with no reasoning or authority suggesting that such a misrepresentation is a basis for reversal. Furthermore, while Lyle cites *Clemons*, 202 Ill. 2d at 356-57, for the proposition that the reversal of a trial court's judgment results in a complete abrogation of that judgment, he cites no authority for his implicit suggestion that such a reversal also renders previously admitted trial testimony and evidence incompetent for any future proceedings. Accordingly, both of these points are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1., 2020). For all of these reasons, we find that the trial court did not violate our mandate in *Voga I* when it declined Lyle's request to hold an entirely new trial.[2]

---

[2] In his reply brief, Lyle additionally argues that the trial court could not have considered evidence adduced at the first trial, because "evidence as to matters that occurred before appeal are generally not taken as evidence in subsequent proceedings unless there is an agreement between the parties, which in the present case there was not as evidenced by Lyle Voga's Motion to Reopen the Proofs." In support of this proposition, Lyle cites to *Roggenbuck* and *Clemons*. Upon review

¶ 39                                    2. Evidentiary Concerns

¶ 40     Next, Lyle argues that the trial court erred in not granting him a new trial because of certain evidentiary concerns. First, Lyle argues that he is entitled to a new trial because certain facts were inadequately developed during the parties' earlier trial. Second, Lyle argues that he is entitled to a new trial because the evidence adduced at the prior trial is "stale." We reject both of these contentions.

¶ 41                                    i. Inadequately Developed Facts

¶ 42     Because Lyle has failed to describe any disputed, material questions requiring further development, we reject his argument that a new trial is necessary for him to adequately develop certain facts.

> "Where a material question is in controversy upon a material issue, and the record discloses that all the evidence on that issue has not been produced, [a reviewing] court has the power to reverse the judgment and remand the cause for the taking of further evidence on the part of either or both of the parties, upon the issues." *American Smelting & Refining Co. v. Industrial Commission*, 353 Ill. 324, 329-30 (1933).

---

of these cases, we find no language in *Clemons* supporting Lyle's contention, and we also note that Lyle mischaracterizes *Roggenbuck*. There, our supreme court found that "the testimony of witnesses or other evidence *contained in a bill of exceptions* taken on the trial of a cause is not evidence on the *subsequent trial* of the same cause unless by agreement of the parties." (Emphasis added.) *Roggenbuck,* 330 Ill. 294 at 299. Here, there was neither a bill of exceptions filed by any party, nor any second trial. Accordingly, *Roggenbuck* is inapplicable. *Id.*

¶ 43    Citing *American Smelting*, Lyle essentially argues that, because the trial court had prevented him from questioning any witnesses as to the validity of the Amendment, a new trial is warranted so that he may pursue this line of questioning. In other words, Lyle argues that he is entitled to a new trial because the former trial evidence pertaining to the validity of the Amendment was not fully developed. However, pursuant to *American Smelting*, a reviewing court may only order a new trial where prior undeveloped evidence involved "a material question *** in controversy upon a material issue." *Id.* Here, because we already determined the Amendment to be invalid while deciding *Voga II*, it cannot be said that the question of the Amendment's validity currently constitutes "a material question *** in controversy upon a material issue." *Id.* Consequently, *American Smelting* does not support Lyle's argument that he is entitled to a new trial. *Id.*

¶ 44    Regardless, Lyle suggests that the validity of the Amendment remained material despite our ruling in *Voga II*, asserting:

> "The entire basis for the proceedings has now changed. As before, where [the Amendment] was presumed valid and was dictating the court determinations relating to accountings, fiduciary obligations, and ultimate distributions, now the *** [A]mendment has been nullified which was altered drastically the way the parties and the court are to address the well-pled issues before them."

We do not find Lyle's conclusory arguments to be convincing. Again, in deciding *Voga II*, we settled the issue of the Amendment's validity, and our decision that the Amendment was invalid became the law of the case. Consequently, there is no way that the issue of the Amendment's validity remained in "controversy" for purposes of *American Smelting*. *Id.* Furthermore, while Lyle suggests that further testimony as to the Amendment's validity was necessary to settle his

remaining contentions, he provides us with no specific reasoning or examples demonstrating as much, especially when one considers that the trial court's September 30, 2021, findings already relied on the assumption that the Amendment was invalid, consistent with our findings in *Voga II*. For all of these reasons, we disagree with Lyle's arguments that he was entitled to a new trial so that he could further question witnesses as to the Amendment's validity.

¶ 45                                    ii. Stale Evidence

¶ 46     Next, while Lyle argues that he is entitled to a new trial because the evidence adduced at the prior trial had since become "stale," this contention is forfeited. Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1., 2020), any arguments contained in an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The failure to adequately develop an argument or to support an argument with pertinent authority results in forfeiture of the issue. *Franciscan Communities, Inc. v. Hamer*, 2012 IL App (2d) 110431, ¶ 19.

¶ 47     Here, Lyle's arguments concerning the "stale" evidence adduced at the parties' trial are undeveloped and unsupported by any authority whatsoever. For instance, while he argues that "certain material circumstances" had "changed" since the prior trial, such as Larry Voga's death and the "Trust's continued need to maintain certain assets," he provides no reasoning as to how these changes are material or how they are relevant to the trial court's September 30, 2021, findings. Lyle provides no authority explaining when evidence becomes "stale," and he cites no authority for the proposition that a new trial is warranted solely on the basis of "stale" evidence. For these reasons, Lyle's arguments on the subject are forfeited, and Lyle has failed to show that the court abused its discretion in denying his request for a new trial. *Id.*

¶ 48                                B. Matters Not in Evidence

¶ 49   Second, we decline to consider Lyle's argument that the trial court improperly ruled on matters that were neither in evidence nor before the court, because the issue is moot. "As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). "When a decision on the merits would not result in appropriate relief, such a decision would essentially be an advisory opinion." *Commonwealth Edison Co. v. Illinois Commerce Commission*, 2016 IL 118129, ¶ 10.

¶ 50   Here, Lyle challenges the trial court's finding that Linda did not breach any fiduciary duty owed to her siblings, arguing that the matter was never properly before the court. Consequently, Lyle argues that we should strike any language from the September 30, 2021, order concerning Linda's fiduciary duties, as any findings on the subject were "null and void."

¶ 51   Because any issue of Linda's fiduciary duties is moot, we deny Lyle's request. Again, Lyle essentially argues that the issue of Linda's fiduciary duties was neither relevant to his amended countercomplaint, nor pertinent to the evidence that was adduced below. Accordingly, Lyle implicitly concedes that Linda's fiduciary duties—or any breach thereof—is irrelevant to his amended countercomplaint. Because the issue is irrelevant to the amended countercomplaint, it cannot be said that Linda's fiduciary duties affect the relief requested in the amended countercomplaint. Indeed, upon our review of the trial court's September 30, 2021, order, we find no indication that the court's findings as to Linda affected Lyle's sought-after relief, and Lyle has cited no portions of the record or provided us with any arguments demonstrating as much. Consequently, because any further findings as to Linda's fiduciary duties would therefore amount to an advisory opinion, we will not consider the moot issue. *Id.*

¶ 52   C. Overpayments to the Trust

¶ 53    Third, we reject Lyle's argument that the trial court failed to properly account for the Trust. "When a trustee breaches a trust agreement, whether wilfully, negligently, or by oversight, he is liable for any loss to the estate resulting from the breach and must place the beneficiaries in the position they would have held had the breach not occurred." *Progressive Land Developers, Inc. v. Exchange National Bank of Chicago*, 266 Ill. App. 3d 934, 942 (1994).

¶ 54    Here, Lyle argues that the trial court failed to properly account for the trust when it ordered him to pay $11,818.32 to Lois. In support of this argument, Lyle cites several sources purportedly establishing the proper procedure "of how overpayments by a trustee are supposed to be [properly] handled." Specifically, Lyle cites *Gearheart v. Gearheart*, 2020 IL App (1st) 190042 (2020), the Restatement (Second) of Trusts § 254 cmt. e (1959), section 817 of the Illinois Trust Code (760 ILCS 3/817 (West 2022)), and *In re Will of Samson*, 684 So. 2d 845 (Fla. 1996), all for the proposition that a trustee may only rectify trust overpayments by restoring overpaid amounts directly back to a trust. Relying on these sources, Lyle seemingly argues that the trial court was only empowered to order him to pay $11,818.32—representing the sum total of his outstanding overpayments—directly to the Trust and not to Lois.

¶ 55    Because none of Lyle's cited sources establish that trust overpayments must always be restored to a trust, we reject this argument. In *Gearheart*, the plaintiff beneficiary sought "an order requiring [the] defendant [trustee] to provide a full accounting of all distributions made from [a] trust," so that the defendant could "restore to the trust any distributions made in violation of the trust instruments' terms, with interest." 2020 IL App (1st) 190042, ¶ 16. There, after a trial, the court found that the defendant had breached certain fiduciary duties owed to the trust's beneficiaries, and "ordered [the] defendant to 'restore sums wrongfully taken from the [t]rust.' " *Id.* ¶ 110. According to the trial court in *Gearheart*, "[W]here funds [are] improperly released from

a trust, the trustee must return that amount, as the trustee is personally liable for any loss occasioned by a violation of his duties as trustee." *Id.*

¶ 56   While the trial court in *Gearheart* did find it appropriate for the defendant to reimburse any unauthorized distributions back to the trust, no parties appealed that aspect of the trial court's ruling. *Id.*, ¶¶ 121-151. Consequently, the First District never contemplated the proper procedure for remedying trust overpayments. *Id.* Accordingly, the case is inapposite and does not support Lyle's position.

¶ 57   Similarly, the Restatement (Second) of Trusts § 254 cmt. e (1959), does not establish that the trial court erred in ordering Lyle to pay $11,818.32 directly to Lois. Pursuant to the Restatement (Second) of Trusts § 254 (1959):

> "If the trustee has made a payment out of trust property to one of several beneficiaries to which the beneficiary was not entitled, such beneficiary is personally liable for the amount of such overpayment, and his beneficial interest is subject to a charge for the repayment thereof, unless he has so changed his position that it is inequitable to compel him to make repayment."

Furthermore, comment (e) to section 254 reads:

> "If the trustee makes an overpayment out of the trust estate to one of several beneficiaries, the trustee is entitled to maintain a suit against the beneficiary who is overpaid and is entitled to a charge upon the beneficiary's interest for the amount of the overpayment, and he is under a duty to the other beneficiaries to maintain such a suit or to enforce such a charge, unless he has himself made good to the other beneficiaries or has paid into the trust the amount of the overpayment, for which he is himself personally liable." Restatement (Second) of Trusts § 254 cmt. e (1959).

Despite Lyle's arguments to the contrary, we see nothing in the above language specifically providing that a trustee's overpayments of trust funds may *only* be rectified by reimbursing the trust. In fact, comment (e) suggests otherwise—that a trustee may "[make] good to the other beneficiaries" in lieu of restoring any overpayments back to the trust. *Id.* This language creates the inference that a trustee may rectify overpayments through direct dealings with the other beneficiaries.

¶ 58    Lyle's reliance on section 817 of the Illinois Trust Code is also misplaced. This section of the Illinois Trust Code, which deals with the distribution of trust funds upon the termination of a trust, contains no language whatsoever specifying where or to whom trust overpayments should be restored. Bluntly put, this statute is completely irrelevant to Lyle's argument.

¶ 59    While it is true that *In re Will of Samson*, 684 So. 2d at 846-47, stands for the proposition that, "[i]n general, a [trust] beneficiary is obligated to restore an overpayment to the trust," this case does not provide that repayment to the trust is the sole method by which a trustee may rectify an overpayment. Furthermore, even if *Samson* were interpreted to only allow repayment to a trust, the case has been decided by a Florida court, and "cases from foreign jurisdictions are not precedential or binding on this court." *In re A.C.*, 2016 IL App (1st) 153047, ¶ 47. For these reasons, none of Lyle's cited sources convince us that the trial court erred in accounting for the Trust.

¶ 60    Because "the relief sought within [c]ount I of Lyle's complaint d[id] not seek the entry of a personal judgment against any one" of his siblings, Lyle alternatively argues that the trial court's judgment improperly granted unrequested relief to the parties. We reject this last contention.

¶ 61    "Courts of equity possess original and inherent power to recognize, execute and control trusts and trust funds." *Village of Hinsdale v. Chicago City Missionary Society*, 375 Ill. 220, 233

(1940). "While as a general rule the relief awarded should conform to that sought by the pleadings [citations], this rule does not always apply and, in many cases, the court has power to grant any relief within the issues formed by the pleadings and justified by the evidence, regardless of the specific relief demanded." *Hare v. Canvassing Board of Berwyn Township*, 146 Ill. App. 3d 88, 91 (1986). In determining whether a deviation from a party's requested relief is warranted, we are guided by principles of equity. *Id.*

¶ 62    Here, although Lyle did not expressly seek a personal judgment against any of the Trust's co-trustees, we nonetheless uphold the trial court's order. Again, while completing its accounting of the Trust, the court found that Lyle received $11,818.32 more than what he was due, and that Lois was entitled to an additional $11,818.32 from the Trust's residuary. Given the court's inherent power over trust funds and the fact that Lyle's overpayments mirrored the amount of money that Lois was owed, we believe the trial court's decision to have Lyle pay $11,818.32 directly to Lois was equitable, especially because Lyle suffered no prejudice by having to pay Lois directly rather than placing the money back within the Trust. Thus, we reject Lyle's contention that the trial court failed to properly account for the Trust.

¶ 63                                III. CONCLUSION

¶ 64    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 65    Affirmed.